## No. 9680.

PROUSE *v.* THE INDUSTRIAL COMMISSION OF COLORADO, ET AL.

Decided Dec. 6, 1920. Rehearing denied Jan. 10, 1921.

Proceeding under the workmen's compensation act. Claim denied.

### *Affirmed.*

1. WORKMEN'S COMPENSATION—*Industrial Commission—Findings of Fact.* It is duty of the commission to make sufficiently detailed findings of fact so that the courts can determine whether the order or award is supported by the facts.

> Statements which amount to mere conclusions are not sufficient.

2. APPEAL AND ERROR—*Review of Evidence—Industrial Commission.* The appellate court cannot review an industrial commission case on the evidence, but where the evidence is undisputed it may be treated as the findings of fact and considered accordingly.

3. WORKMEN'S ·COMPENSATION—*Accident.* An accident under the various workmen's compensation acts, must be traceable to a definite time, place and cause; the occurrence constituting an accident must be unexpected and must be the proximate cause of death, where death results, or of the disease which produced the death.

*Error to the District Court of Boulder County, Hon. Neil F. Graham, Judge.*

Messrs. RINN & ARCHIBALD, for plaintiff in error.

Mr. VICTOR E. KEYES, attorney general, Mr. JOHN S. FINE, assistant, Mr. WALTER E. SCHWED, Mr. H. E. CURRAN, Messrs. HUGHES & DORSEY, Mr. W. M. BOND, JR., Mr. ROBERT L. STEARNS, for defendants in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

THE Industrial Commission denied the claim of the plaintiff in error, Pearl Prouse, for compensation for the death of her husband, and its judgment was affirmed by the district court.

It is claimed, first, ·that the commission did not make sufficient findings of fact as required by law, and second, that the commission erroneously held that the death of the husband of plaintiff in error, George Prouse, was not caused by· accident.

As to the first point, the finding of the commission was "that the burden of proof is upon the claimants herein. That the claimants have not established their claim by a preponderance of the evidence. That they have not established that the death of the said George Prouse, deceased, was caused by any accident arising out of and in the course

of his employment while employed by the said The Rocky Mountain Fuel Company, and that they have failed to show any connection between his death and any alleged accident sustained by him while in the employ of the said The Rocky Mountain Fuel Company and that therefore the claim of the said claimants should be denied."

It is the duty of the commission to make sufficiently detailed findings of fact so that the courts can determine whether the order or award is supported by the facts. S. L. 1919, p. 743, § 103 and S. L. 1915, p. 558 § 81. This seems to be the rule in other jurisdictions. *Gardner v. Horseheads Construction Co.*, 171 App. Div. 66, 156 N. Y. Supp. 899; *Inland Steel Co. v. Lambert*, 118 N. E. (Ind.) 163; *Western Indemnity Co. v. Pillsbury,* 170 Cal. 686; *Dodge v. Barstow Stove Co.,* 40 R. I. 191, 100 Atl. 245.

The findings of fact in this case are insufficient. They state merely a conclusion of law.

We have no right to review the case upon the evidence, S. L. 1915, p. 558 § 81. The evidence, however, in this case, is not conflicting, the facts are undisputed, and we think the commission's decision was right, therefore the case is not remanded for more detailed finding, but we consider the evidence as if it were the findings of fact.

George Prouse on the 15th day of December, 1917, was working with others in the Mitchell mine. They broke into an old, enclosed entry, whence came foul air and dioxide gas. Foul air and gas continued in the mine for some weeks and until Prouse was compelled to stop work.

About January 1st, 1918, his physician was called to see him, and told him that he was working too hard in bad air and advised him to lay off.

About the 12th or 15th of January the physician was called again and found him suffering from headache, pain all over, sore throat and high temperature. He later went back to work, however. Two or three days later the doctor found him much worse; he was taken to a hospital and about the 17th of February died. The bacteriologist's test showed septicemia. Dr. Braden, the physician who at-

tended him, testified that, in his opinion, the immediate cause of death was septicemia; that a contributing cause was his failure to show the average resistance and that was "the result of working in a poorly ventilated atmosphere. That is my opinion, that was what I had in mind when I advised him to lay off." Dr. Reed, the bacteriologist who had charge of the patient at the hospital, gave his opinion that the direct cause was *pyaemia,* (of a similar nature to septicemia) and his opinion also was that the bad ventilation at the mine had rendered the patient susceptible to the infection, but there was no evidence as to when, where or how the patient contracted it.

The statute, Session Laws 1915, page 532, § 8, provides for compensation only "where the injury is proximately caused by accident. * * *."

The question is whether the death of George Prouse was proximately caused by an accident. There is no evidence that such is the case. The evidence is undisputed that the man died of infection by the germ of septicemia or pyaemia. There is no evidence as to where he got that germ. There is no evidence that the sudden inhalation of gas and foul air from the old workings caused the disease, but the evidence is that the continued inhalation of foul air in the mine rendered the patient more susceptible or less resistant to the infection, and so contributed to the death.

There are several reasons why this is not within the terms of the statute above quoted: First, an accident, under the various workmens' compensation acts, must be traceable to a definite time, place and cause. *Matthiessen &c. Co. v. Industrial Board,* 284 Ill. 378, 120 N. E. 249. The occurrence shown in the evidence is not traceable to a definite time. Second, the occurrence constituting an accident must be unexpected. 1 Corp. Jur. 39; *Matthiessen v. Industrial Board, supra.* In the present case it was not unexpected. Third, The occurrence must be the proximate cause of the death or of the disease which produced the death. This occurrence was not.

As to the first point: In the present case the time is

indefinite. A continued working in bad air for somewhere between two weeks and two months depleted the system and rendered it susceptible to a disease or unable to resist a disease, the time, place or manner of contracting which is not shown by the evidence, nor is anything shown from which it can be determined.

The case most nearly like the present is the Scotch case, *Kelly v. Coal Company,* 48 Scottish Law Rep. 768, but there the "accident" was "one lethal dose" of carbon monoxide generated by an explosion of gunpowder. The court lays stress upon the point that there was an unusual occurrence on a definite day from which the symptoms were immediately felt, and they cite *Steele v. Cammell et al.,* (1905) 2 K. B., holding that "injury from long continued breathing of lead fumes was not accidental because it could not be traced to any particular day, but was the result of an accumulation of poisoning extending over a period of time." *Broderick v. London County Council,* 2 K. B. 807, is also cited upon the same point.

The Scotch case, then, is an authority against and not for the claimant in this case. See also, *Alloa Coal Co. v. Drylie,* 6 B. W. C. C. 398; *Hurle v. Plymouth Cordage Co.,* 217 Mass. 223, 104 N. E. 336, L. R. A. 1916A, 279, Ann. Cas. 1915C, 919.

Upon the second point: An accident must be unexpected. Bad air, continued from day to day, is expected. The doctor expected it to continue and advised a lay-off. Prouse knew it was bad, knew it was continuing, or he could not have told the doctor about it. Prouse continued to labor in the gas-contaminated air for some weeks, growing constantly worse, so his doctor testified, because of the bad air. This is no accident. Every definition or attempted definition of accident includes the element of unexpectedness. 1 Corp. Jur. 390; *Matthiessen v. Indus. Bd., supra; Kelly v. Coal Co., supra; Broderick v. London County Council, supra; Steele v. Cammell &c., supra.* The deleterious result was also expected; the doctor warned against it; so the deleterious result was not an accident.

As to the third point: Prouse did not die of the poisonous gas; he died of septicemia or pyaemia, a disease caused by a definite infection by a germ which has been isolated by the bacteriologists and classified. The only connection which the gas and bad air had with this disease, according to the undisputed testimony of the physicians, was that it depleted the patient's system and rendered him more susceptible or less resistant to it. They do not say that he would not have contracted the disease if he had not worked in the gas, or would not have died of it, nor do they express such opinions.

Bad air makes a man more susceptible to tuberculosis. Every clerk works part of the time in bad air. If he contracts tuberculosis no physician can deny that the bad air probably made him susceptible and so was a contributing cause. If so, is he entitled to compensation? So of any other germ disease, e. g., typhoid fever, infant paralysis, meningitis, &c., &c.

The decision in the case of the *United Paperboard Co. v. Lewis,* 65 Ind. App. 356, 117 N. E. 276, seems to us extreme in itself, but the *dicta* of the court therein would seem to make the employer liable for every case of sickness of which the employment was the procuring cause, and we cannot follow it.

The Massachusetts cases have no bearing here because the Massachusetts Act does not use the word "accident" nor any derivative or equivalent. The word "accidentally" and the words "proximately caused by accident" in our Act, Session Laws, page 522, § 8, must be given some force.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE GARRIGUES and MR. JUSTICE SCOTT dissent.

MR. JUSTICE TELLER not participating.

MR. JUSTICE SCOTT dissenting.

I must earnestly dissent from the opinion of the majority. To my mind there is no reasonable distinction to be

made between this case and that of Carroll, considered at the same time, wherein a precisely contrary view of the law is taken. Hair-splitting distinctions used in the opinion do not cover the wrong and injustice to follow, not in this case alone, but in others of a similar character.

The difficulty seems to lie in the seeming inability of lawyers and judges to get away from the hoary defenses of contributory negligence and assumed risk in negligence cases, so clearly wiped out by the express language of the statute we are considering.

A consideration of the majority opinion will disclose that the conclusion is based solely upon the doctrine of assumed risk. Prouse went back to work after the gas was discovered, which act was his own fault and by which he assumed the risk and should not recover. Such is the reasoning, and the opinion not only ignores the command of the statute in this respect, but fails to comprehend the principle and purpose of the legislative acts of the character involved.

The statute is not penal in its nature, nor compensatory as against the employer, and therefore every element of negligence has been eliminated by it from consideration. For this there has been substituted the policy of humanity and state polity, immediate provision for the injured and his dependents, and economy to the state and the public in avoiding to the extent possible the number of public charges.

The insurance is primarily by the state itself, and profit from premiums paid in such insurance by the state was never contemplated by the European founders of the plan, nor by the American states which have adopted it. The compensation allowed does not rest upon either duty or contract. Such statutes are sustained only upon the theory of the exercise of the police power.

With this view of the purposes and character of the act, the authorities hereinafter cited fully sustain the view that compensation should have been awarded in this case.

George Prouse was a coal miner in the employ of the defendant, The Rocky Mountain Coal Company, and at the Mitchell Mine. While so employed, and on or about the

15th day of December, 1917, there was broken into an old and enclosed entry, from which there exuded foul air and gas, termed dioxide gas, which condition continued until he was compelled to and did cease to labor, dying shortly after from the disease called pyaemia, being a poison; a germ disease. His death occurred on the 17th of February.

He had theretofore been a strong healthy man, weighing about one hundred and eighty pounds, working constantly, and had not theretofore suffered from any illness.

His family physician, Dr. Braden, who had known him for some years, was called to see him the latter part of December or the first of January. He complained of a cough and weakness, and that he had difficulty in doing his work, and had lost much flesh. The doctor concluded that he was working too hard and probably in bad air, and advised him to lay off.

The physician was called to his home at a time from the 12th to the 15th day of January, and found him suffering from a headache, aching all over, with a sore throat and high temperature. The deceased went back to work later. But about the third day after the call above stated, the physcian found him in the condition as follows:

"I saw him about the third day, when he began to have fever and pains in the right upper chest and shoulder. He had not been able to bathe himself and still had the coal dust on him from the mines. He said he had a bad night, slept very little, vomited, had headache and ached all over; his temperature was about 104.

Q. What did he do after that? A. His condition was similar the next day. He vomited and took very little nourishment; breathed rapidly, abdomen extended and had pains in the shoulder. I am not positive as to the time of these things. One ankle became swollen, his knee became swollen and there was evidence of a fluid of some kind in his knee. Later one wrist began to swell and after a few days the other wrist became involved. This covered a period of probably two weeks. Then one eye became inflamed and swollen until it could be brushed from the

socket; he became blind in one eye. During the time these changes were taking place he developed symptoms of endocarditis, or inflammation of the linings of the heart. He had a septic type until we sent him to the hospital along about the 14th or 15th of February."

Dr. Braden's testimony as to the cause of death was as follows:

"I think that the immediate cause of death was septicemia, that was my diagnosis before sending him here, and my report from Dr. Reed was that the bacteriological test showed septicemia from the blood and from the pus taken from the infection in the left shoulder. The contributing cause was his failure to show the average resistance, and in my opinion, his failure to show the average resistance, was the result of working in a poorly ventilated atmosphere; that is my opinion. That was what I had in mind when I advised him to take a lay-off."

The only other physician to testify was Dr. Reed, who had charge of the patient at the University Hospital. He treated him from the time of his entrance to the hospital until his death. He gave it as his opinion that the direct cause of his death was pyaemia. It seems that pyaemia, like septicemia, is a germ poison and of similar nature. Dr. Reed was asked the questions and gave answers as follows:

Q. Assuming the above statement of facts as disclosed in Question No. 1 to be true, could you not state with reasonable certainty, and from the examination you made of the deceased, that the pyaemia followed as a natural consequence from the injury to the system and to the throat and lungs of the said deceased, which was originally caused by the inhalation of poisonous gases as aforesaid?

A. My answer to that question is simply this, as Dr. Braden has stated two or three times, and I want to confirm because it is my own belief, that his working in bad air and lowering his general state of health put him in such a position, that his resistance is bad; now an infection comes along at a time when his vitality is low and he is

susceptible to it, and succumbs to it and dies of pyaemia.

Q.  This morning, Doctor, did you not answer this question which I have just written and read to you in this way, "there would seem to be a reasonable connection between his pyaemia and infection and the gas inhalation"?

A.  Yes, I will still say the same thing.

Q.  Is it not a fact that germs or microbes may affect the human system by being breathed into the throat and lungs?

A.  Yes.

Q.  Is it not a fact that a weakened condition of the body caused by a continuous inhalation of mine gas will render such body reasonably susceptible of becoming poisoned by the microbe which is the basis of pyaemia?

A.  Yes."

Dr. Braden also testified that there was a reasonable connection between the inhalation of the gas which the patient inhaled and the disease from which he died.

There was no contradictory testimony given or offered. There is much other testimony by these physicians that makes the conclusion irresistible that the disease from which Prouse died was induced and caused from inhaling the gas from the mines in which he was working.

We now come to the question as to whether or not under the facts and circumstances of this case, appearing from the record, the petitioners are entitled to recover under the Workmen's Compensation Law.  Was the death of Prouse the result of an accident within the meaning of the law?

It is generally held that the term "accident," within the meaning of the statute, cannot be confined to an injury by external, violent and accidental means, but includes injuries to workmen which are unexpected and unintentional.  The authorities upon this question are quite fully reviewed in the case of *Fidelity and Casualty Company v. Commission*, 177 Cal. 614, 171 Pac. 429, L. R. A. 1918F, 856.

That case involved the claim to compensation under the compensation act, of a sign writer who had for about one and one-half years been in the habit of using dyes dissolved

in wood alcohol and forced through a fine needle by air pressure. This was done in order to better shade the colors. Ordinarily this method was employed but a small portion of the time, but during the holidays, and shortly prior to the accident, it was frequently used. Without notice of anything unusual, he suddenly discovered his eyesight failing, and later was so badly affected that it prevented his following his employment. The court held that it was an accident which arose out of his employment. After a review of the authorities, the court said:

"Applying this current of authority to the facts of the case at bar, it must be evident that the injury suffered by the applicant as set forth in the findings of fact of the Industrial Accident Commission and for which he was awarded compensation was an 'accident' within the meaning of the act. Many cases might be cited from other states having similar statutes and from England, in which like unforeseen, unexpected and unintended injuries to employes have been classed as 'accidents' and held sufficient to justify awards, such as injuries sustained by persons while lifting heavy objects, or through exposure to drafts or chilly air, or icy water in mines; or through the rupture of blood vessels brought on by unusual heat or overexertion, or through the inhalation of poisonous gases, and the like; but we think the reasoning of the decisions of this court above cited sufficient to define the scope and meaning of the act so as to justify its application to the instant case."

A case very similar to the case at bar was that of *Matthiessen Co. v. Industrial Board,* by the Supreme Court of Illinois, 284 Ill. 378, 120 N. E. 249. The opinion is instructive and exhaustive, and seems to be conclusive of this point.

There, one Adrian, for many years engaged as a fireman in a smelter, where zinc ores were smelted, was required each day for a time to draw the scum and dross or oxide, from the surface of the molten zinc. He had worked up to and including the day he was stricken without indication of illness. On the evening of that day, he was seized

with cramps through his arms, legs, chest, stomach and bowels. His teeth became black and loose, his toe and finger nails became black and his eyes glassy, and his mind wandering. He died within a short time. Two physicians testified that, in their opinion, death was caused by arsenical poisoning; that his system had become surcharged with this, and which, finally becoming acute, caused his death. The award was sustained by the court. The opinion proceeds to consider the policy and principle of the Workmen's Compensation Act along the lines of *Industrial Commission v. Aetna Life Insurance Co.*, 64 Colo. 480, 174 Pac. 589, 3 A. L. R. 1336, and declares:

"While it is not intended, and perhaps not possible to give a definition of the words used in the act as applied to all possible circumstances, it may safely be said that an injury is accidental, within the meaning of the act, which occurs in the course of the employment, unexpectedly and without the affirmative act or design of the employe. In this case there was evidence from which the industrial board was warranted in finding that on October 6, 1914, in the course of the employment of Adrian, he contracted arsenical poisoning which resulted in his death. It is true that Adrian had been exposed to practically the same conditions for many years without injury, but it would not be unreasonable to conclude that his immunity was the cause of the state of his health and his ability to resist the deleterious effect of the gases and fumes over which he worked, but this time, his physical condition was such as to make him susceptible to arsenical poisoning in such a degree as to bring on his fatal illness and death. There was sufficient competent evidence before the board to sustain the finding and it cannot be disturbed."

The doctrine announced in these cases is approved in an exhaustive review of the authorities, in *Indian Creek Coal Mining Co. v. Calvert*, 119 N. E. (Ind.) 519.

In the Scotch case of *Kelly v. Auchenlea Coal Company Ltd.*, Scottish Law Reporter, Vol. 48, page 768, will be

found a very convincing review of the subject we are discussing. The facts of the case were:

"A miner employed in a mine in the course of his work fired a shot of gunpowder, and about three minutes after the explosion returned to the working place when it was still full of smoke. He subsequently died of pneumonia, caused by the inhalation of carbon monoxide gas generated by the explosion. It was found proved that this gas was generated by the combustion of gunpowder in varying proportions depending on the ventilation, that similar blasting operations were of daily occurrence, and that on previous occasions the deceased had suffered by headache and nausea caused by the gas. In a claim at the instance of the deceased's dependents, *held,* that death resulted from an accident within the meaning of the Act."

It is contended that the evidence does not show such causal connections between the conditions under which the work was required to be performed and the resulting injury and death.

The case of the *United Paper Board Co. v. Lewis,* 65 Ind. App. 336, 117 N. E. 276, is enlightening upon this subject. In that case, the workman, by reason of a broken pipe, was compelled to flush out the hot steam pulp into a sewer. This caused him to become overheated, and while overheated he came into contact with the open air, which caused him to chill for several days, and, as a final result of such overheating, the disease of acute nephritis, or inflammation of the kidneys developed, causing the disability claimed. The court said:

"It may be well to observe that the courts are practically unanimous in holding that the words 'by accident arising out of and in the course of the employment,' as used in Workmen's Compensation Acts, should be given a broad and liberal construction in order that the humane purpose of their enactment may be realized. Holland-St. Louis Sugar Co. v. Shraluka, 116 N. E. 330, and the authorities there cited. Their meaning, when so used, has been frequently considered in various jurisdictions having such

acts, and it is generally accepted that an injury is received in the course of the employment when it comes while the workman is performing the duty for which he is employed, and that it arises out of the employment, when there is apparent to the rational mind upon a consideration of all the circumstances, a causal connection between the conditions under which the work was required to be performed and the resulting injury. * * *

We have held that the evidence was sufficient to warrant the board in finding that appellee was suffering from an injury by accident, and from a consideration of the rule above stated and the authorities cited, it is quite apparent that there was evidence to warrant the further finding that such injury arose out of and in the course of his employment. There was evidence which tended to show that the accident which caused the injury was the overheating described, and that it occurred while appellee was performing the duty required of him in the basement room, in flushing the hot, steaming pulp into the sewer. Under such circumstances, it is clear that the injury was received in the course of his employment. There was also evidence which tended to show that the enforced exposure in the basement room under the unusual conditions first caused appellee to become overheated, that while thus overheated he came into contact with the open air, which caused him to chill for several days, and that as a final result of such overheating the disease of acute nephritis developed, causing the disability for which he claims compensation. Such evidence furnished a sufficient basis for finding a causal connection between the conditions under which the work was required to be performed and the resulting injury. In such event, the board was warranted in finding that appellee's injury arose out of his employment."

Clearly there was established a plainer case of causal connection between the working conditions and the final result in the case at bar than in that case.

In the case of In Re Madden, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000, it was held that when the already

impaired heart of a servant was injured by her work of pulling a carpet, which did not require such a muscular exertion as would have affected a healthy person, the injury nevertheless resulted from her work as a contributing, proximate cause.  The court said:

"It has been argued with force on behalf of the insurer that since the harm to the employe was not wholly the effect of the work but came in large part from the previously weakened condition of the employe's heart, hence, either there can be no award of compensation, or it should be restricted to that part of the injury which resulted directly from the work, and the part of the injury which flowed from the previous condition should be excluded.  Even though the premise may be sound, the conclusion does not follow.  The act makes no provision for any such analysis or apportionment.  It protects the 'employe.'  That word is defined in part 5, sec. 2, as including 'every person in the service of another under any contract of hire' with the exceptions not here pertinent.  There is nothing said about the protection being confined to the healthy employe.  The previous condition of health is of no consequence in determining the matter of relief to be afforded.  It has no more to do with it than his lack of ordinary care or the employer's freedom from simple negligence.  It is a most material circumstance to be considered and weighed in ascertaining whether the injury resulted from the work or from disease. It is the injury arising out of the employment and not out of disease of the employe for which compensation is to be made.  Yet it is the hazard of the employment acting upon the particular employe in his condition of health and not what that hazard would be if acting upon a healthy employe or upon the average employe.  The act makes no distinction between wise or foolish, skilled or inexperienced, healthy or diseased employes.  All who are rightly describable as employes come within the act."

In the case of *Retmier v. Cruse,* 119 N. E. (Ind.) 32, where an employe received a severe injury to his back on September 8, 1915, and died from tuberculosis on July 8,

1917, and where medical testimony disclosed that his injury resulted in nephritis which lowered his power to resist an attack of tuberculosis, it was held that the finding of the Industrial Commission that the injury accelerated the disease and caused his death earlier than it would have otherwise occurred, was proper and compensation was awarded.

In *City of Milwaukee v. Industrial Commission,* 160 Wis. 238, 151 N. W. 247, a school principal, while supervising a basket-ball game, within the line of his duty, was struck on the head by a ball; he was suffering at the time from an advanced stage of arterio-sclerosis. The court found that had he not been so suffering, the blow would in all probability have caused no injury. It was held:

"Proximate cause as applied to negligence law has, by definition, included within it the element of reasonable anticipation. But the right to recover under the Workmen's Compensation Act is not dependent upon a question of negligence, and an injury is 'proximately caused by accident' within the meaning of Section 2394-4, Stats. 1911, if it can be traced to physical causation not too remote in time or place to the accident, irrespective of any element of reasonable anticipation."

In *Hurle's Case,* 217 Mass. 223, 104 N. E. 336, L. R. A. 1916A, 279, Ann. Cas. 1915C, 919, a workman, employed in tending furnaces that produced gas from the burning of coal, was obliged to remove the covers from the holes in the tops of the furnaces about seventy times a day. At such times of removal of the covers, poisonous coal tar gases arose from the furnaces, and the workman contracted neuritis as a result of such inhalation, which caused blindness. In his claim for compensation, it appeared that there was no explosion or distinguishing difference of time or place, but simply the continuous operation of the furnaces that brought about the result. It was held that he was entitled to recover under the Workman's Compensation Act.

In the case of *Vennen v. New Dells Lumber Co.,* 161 Wis. 370, 154 N. W. 640, L. R. A. 1916A, 273, Ann. Cas. 1918B,

293, where a laborer contracted typhoid fever by drinking infected water from a well on the premises of the employer and died from such fever, it was held that his dependents may recover. The court said:

"The fact that the deceased became afflicted with typhoid fever while in defendant's service would not in the sense of the statute, constitute a charge that he sustained an accidental injury, but the allegations go further, and state that this typhoid affliction is attributable to the undesigned and unexpected occurrence of the presence of bacteria in the drinking water furnished him by the defendant, as an incident to his employment. These facts and circumstances clearly charge that Vennen's sickness was the result of an unintended and unexpected mishap incident to his employment. These allegations fulfill the requirements of the statute that the drinking of the polluted water by the deceased was an accidental occurrence while he was 'performing services growing out of and incidental to his employment.' It is alleged that the consequences of this alleged accident resulted in afflicting Vennen with typhoid disease, which caused his death. Diseases caused by accident to employes while 'performing services growing out of and incidental to his employment' are injuries within the contemplation of the Workmen's Compensation Act."

In the case of *London Guarantee Co. v. McPhee*, 222 Mass. 1, 109 N. E. 633, L. R. A. 1916D, 1000, the employe, while attempting to extinguish a fire on the employer's property, was drenched with water and saturated with smoke which began an invasion of his system, ultimately causing lobar pneumonia and death, in an unbroken chain of causation with the accident. Compensation was allowed.

In Vol. 89, page 380, of the Central Law Journal, under date of November 21, 1919, will be found the case of *Eldridge v. Endicott & Co. et al.*, 177 N. Y. Supp. 863, where a servant's neck was cut while being shaved in a barber shop and where the next day symptoms of anthrax arose, from which disease the servant afterward died. This was held to be due to an accidental injury arising in the course of

employment.   Many decided cases are cited in the opinion and in the extended note thereto by the publication, which sustain the conclusion herein reached.

It is suggested that there must be some definite time and occurrence to which the resulting injury must be traced. There is no clearer case reported, where the facts fix the time and the occurrence of the accident with causal resulting injury or death than the case at bar.

In the working of the mine on a date fixed, an enclosure with foul air and gas was broken into.   The condition of foul air and gas continued until the laborer was compelled to quit work.   Within two weeks from the occurrence, according to the testimony, he had lost flesh, and become so debilitated as to cause him to consult a physician.   He again attempted to continue work but was unable to do so, and took to his bed where his condition was found to grow worse continually until his death, all occurring within a period of two months.

Two physicians testified that in their opinion there was a reasonable causal connection between the gas and foul air and the disease from which he died.   This makes a clear case for compensation within the rule of the many cases I have cited.

In this case I do not hold that where a disease exists and there appears no reasonably specific cause, in the course of the employment, which hastens incapacity or produces a causal relation to death, or where no reasonably specific cause in the course of employment produces a condition which in itself is not found to have a causal relation to the injury or to the direct cause of death, that recovery may be had under the Workman's Compensation Act.   The state of facts here does not present such a case, and therefore it is not necessary nor proper to consider or determine the question.

It is as certain as human testimony can make it, positive and medical expert, that Prouse died of a disease directly or indirectly due to the inhalation of gas and foul air while working in the mine of defendant company.

It is held by the great weight of judicial authority that this constitutes an accident within the meaning of Workman's Compensation laws, and entitles the workman or his dependents to an award of compensation, simple justice and sound reason support this view.