Amjsn, J.
 

 The plaintiff in error, the Industrial Commission of Ohio, sets up the following as the issues of law in this case:
 

 “1. Is the widow of a deceased workman who has
 
 *253
 
 proved no
 
 injury
 
 to the deceased entitled to compensation from the state insurance fund?
 

 “2.
 
 Is the widow of a deceased workman whose death resulted from carbon monoxide poisoning due to the
 
 continued inhalation
 
 of carbon monoxide gas over a long period of time entitled to compensation from the state insurance fund?
 

 “3. Does the charge of the court permitting recovery for a disease ‘contracted’ in the course of employment correctly state the law of recovery against the state insurance fund?”
 

 Taking up these questions in their order, we shall first consider whether the record shows that the deceased workman suffered no injury compensable out of the state insurance fund.
 

 It is conceded that an injury must be shown in this case, for the occupational disease statute does not include carbon monoxide poisoning. It does specifically include carbon dioxide poisoning. Section 1465-68a, General Code. Therefore, in order for this death to be compensable, it must be compensable under the "Workmen’s Compensation Act, and must have arisen from an injury. Article II, Section 35, Constitution of Ohio; Section 1465-68, General Code.
 

 It is also conceded that within the purview of the Workmen’s Compensation Act, the term “injury” “does not include diseases which are contracted, as distinguished from diseases which are occasioned by or follow as a result from physical injury.”
 
 Industrial Commission
 
 v.
 
 Cross,
 
 104 Ohio St., 561, 136 N. E., 283;
 
 Renkel
 
 v.
 
 Industrial Commission,
 
 109 Ohio St., 152, 141 N. E., 834;
 
 Industrial Commission
 
 v.
 
 Russell,
 
 111 Ohio St., 692, 146 N. E., 305. However, in the case of
 
 Industrial Commission
 
 v.
 
 Roth,
 
 98 Ohio St., 34, 120 N. E., 172, 6 A. L. R., 1463, it was held that the accidental and unforeseen inhaling by an employe* in the course of his employment, of a specific, volatile poison or gas, resulted in an injury.
 

 
 *254
 
 An accident/within the Ohio decisions, is “some happening that occurs by chance, unexpectedly, and not in the usual course of events.”
 
 Industrial Commission
 
 v.
 
 Roth, supra.
 

 The petition in this case sets out that on two specific occasions the decedent was subjected to a severe attack of this gas, which completely disabled him. This amounts to an allegation that the emission of gas upon these two occasions was unusual and unexpected, that is to say, an “accident,” and therefore the petition does allege the occurrence of an injury within the Ohio holdings.
 

 It is the contention of the Industrial Commission that the record shows that the decedent continually inhaled carbon monoxide gas over a long period of time, that this gradual absorption caused the death, and, while fatal, does not constitute an injury.
 

 The record shows that the decedent was subjected continually to the emissions of carbon monoxide gas. The bake ovens which Palmer tended were in a room in which for a long period of time during his employment no ventilation whatever was permitted; and raw charcoal was ignited for the purpose of securing the heat required.
 

 If this were all the testimony upon the point that the decedent was subjected to emissions of carbon monoxide gas, and if there were not evidence in the record of unusual emissions of gas upon certain specific occasions, recovery would have to be denied under the authority of the Ohio decisions previously'cited.
 

 Two interrogatories were submitted to the jury, which, with their answers, were as follows:
 

 “Interrogatory No. 2.
 

 “Question: Was the carbon monoxide poisoning from which Benjamin Palmer died, exclusively the result of continuous inhalation of gas and continued exposure during the entire period of time that he worked for the Boxill Bruel Carbon Company?
 

 
 *255
 
 “You are instructed to answer this interrogatory ‘yes’ or ‘no.’
 

 “Answer: No.”
 

 “Interrogatory No. 3.
 

 “Question: Was the carbon monoxide poisoning from which Benjamin Palmer died, the result of or contributed to by excessive inhalation of gas on certain specific occasions?
 

 “You are instructed to answer this interrogatory ‘yes’ or ‘no.’
 

 “Answer: Yes.”
 

 Since the jury specifically found, then, that Palmer died as a result of excessive inhalation of carbon monoxide gas on certain specific occasions, we proceed to consider whether there is evidence in the record supporting this finding. If there is, the record contains evidence of an injury and the first two questions raised by the Industrial Commission given above are not presented by the record in exactly the form in which they are urged upon the court.
 

 The record shows, and in fact the court will take judicial notice, that carbon monoxide, gas is both colorless and odorless. Therefore the presence of carbon monoxide gas in unusual quantities at any given time must necessarily be proved by circumstantial evidence. If the presence of the gas is shown, one circumstance of probative value to indicate its presence in unusual quantity is the effect upon the person subjected thereto. The typical case of carbon monoxide poisoning in a garage is a case in point. The record does show directly that the process carried on in these bake ovens produced carbon monoxide gas, and that at certain stages of the process there were minor explosions of gas, accompanied by heavy clouds of smoke. The record also shows that on or about February 10, 1927, Palmer was so severely gassed that, as one of his fellow-workmen said, “we carried him out of there one night where this bake is, this oven, and he was almost
 
 *256
 
 dead that was all. * * * We found him there by the oven.” This statement went on to say that Palmer “couldn’t talk and couldn’t walk.” After some eight days of complete disability under this attack, Palmer returned to work in order to support his family.
 

 The record shows that upon a second occasion, in April of the same year, the gas was so bad that Palmer would not allow his son to go into the bake oven room, and that even staying on the outside, the son got such a headache that he had to leave the plant. Another workman testified that at this time he found Palmer sitting on the floor, unable to move, that he got him to the outside and procured a sack for Palmer to lay his head on, and that he lay there for two hours, too weak to move. A doctor who testified said he was given .a history of a fainting spell by Palmer, due “to the same old dose over there.” Palmer never recovered from this latter attack, and died within a few months of a complication of heart and other trouble, which various physicians testified was the direct result of carbon monoxide poisoning. Hence the record presents some testimony tending to establish an injury. We proceed to consider whether the widow of a deceased workman whose death resulted from carbon monoxide poisoning due to the continued inhalation of carbon monoxide gas over a long period of time, but who also suffered an injury of which he died, is entitled to compensation from the state insurance fund.
 

 Two doctors testified that Palmer exhibited a case of chronic carbon monoxide poisoning. One of these was the doctor employed by the company, and the other an expert who answered a hypothetical question. However, three other doctors, when the specific question was put to them, definitely refused to state whether the poisoning was chronic or accidental.
 

 The record does show that there probably was a continued inhalation of carbon monoxide gas in small quantities by Palmer, over a long period of time. It
 
 *257
 
 also presents testimony tending to prove that he was subjected to an unusual inhalation of carbon monoxide gas on these two specific occasions. The fact that the workman was continually subjected to this poisonous gas does not dispose of the fact, as found by the jury, that upon these two specific occasions he was subjected to an unusual amount of gas. If there was such an unusual emission, from which Palmer suffered disability and death, this constituted an injury. This is the specific holding in
 
 Industrial Commission
 
 v.
 
 Roth, supra.
 
 Furthermore, there is substantial authority for his position in the case law of other jurisdictions.
 
 United States Fidelity & Guaranty Co.
 
 v.
 
 Industrial Commission,
 
 76 Colo., 241, 230 P., 624. This case holds:
 

 “2.
 
 "Where a workman’s death was caused by accidental inhalation of gas, it was immaterial that his health had been impaired by previous inhalations.”
 

 Van Vleet, Admx.,
 
 v.
 
 Public Service Co. of York,
 
 111 Neb., 51, 195 N. W., 467, is very similar to the case presented in the instant record upon this point. It holds in the syllabus as follows:
 

 “2.
 
 Death or injury arising solely as the result of an occupational disease is not compensable under the workmen’s compensation act; but, where the result is attributable in whole or in part to an accident, the fact that, but for the accident, the disease of which claimant died would be classed as occupational, will not prevent compensation, which in such case is awarded for the accident, not the disease.”
 

 Notes collated upon this particular point in volumes 30 and 31 of Negligence Compensation Cases Annotated, Ohio Edition, at pages 363 and 547, respectively, show that the weight of authority sustains this position.
 
 Sullivan Mining Co.
 
 v.
 
 Aschenbach
 
 (C. C. A.), 33 F. (2d), 1;
 
 Sullivan’s Case,
 
 265 Mass., 497, 164 N. E., 457, 62 A. L. R., 1458;
 
 Rue
 
 v.
 
 Eagle-Picher Lead Co.,
 
 225 Mo. App., 408, 38 S. W. (2d), 487;
 
 Ram
 
 
 *258
 

 say
 
 v.
 
 Sullivan Mining Co.,
 
 51 Idaho, 366, 6 P. (2d), 856.
 

 In
 
 Columbine Laundry Co.
 
 v.
 
 Industrial Commission,
 
 73 Colo., 397, 215 P., 870, the court makes the following pertinent statement:
 

 “The principal contention is that the death was not caused accident.
 

 “The plaintiff in error cites
 
 Prouse
 
 v.
 
 Industrial Com.,
 
 69 Colo., 382, 194 Pac., 625, upon the proposition that the accident must be one traceable to a definite time, place and cause. It is claimed that the decedent inhaled gas at other times. The findings, however, are sufficiently specific to show that the injury resulted from the work of the forenoon of April 10, 1922, when the weather was cool, the garage door closed, and the employee inhaled ‘an extra large amount of auto gas.’ The Prouse case is also cited upon the rule that the accident must be an unexpected occurrence. There is evidence that the occurrence involved here was unexpected. Similar work was done in the garage at other times without ill effects. On the date in question there was an extra large amount of exhaust gas. The presence of gas could be expected, but not the injury resulting therefrom. The accident was not the presence of gas, but the effects produced by it, and these were unexpected.”
 

 It is true that there are cases counter to this holding:
 
 Gunter
 
 v.
 
 Sharp & Dohme, Inc.,
 
 159 Md., 438, 151 A., 134;
 
 Depre
 
 v.
 
 Pacific Coast Forge Co.,
 
 151 Wash., 430, 276 P., 89.
 

 However, as stated by Lord Kinnear in the case of
 
 Kelly
 
 v.
 
 Auchenlea Coal Co., Ltd.,
 
 4 Butterworth’s Workmen’s Compensation Cases, 417, the production of the gas here occurred in varying proportions depending on the ventilation. The operation was of daily occurrence. It generated a certain amount of poisonous gas which frequently produced headache and nausea in the deceased; but the result of the pres
 
 *259
 
 enee of noxious gas on ordinary occasions was not fatal to the workman, and its presence on April 21, 1927, was eventually fatal. The
 
 Kelly case
 
 upon this point is very similar to the record herein presented, and it holds:
 

 “A miner employed in a mine in the course of his work fired a shot of gunpowder, and, about three minutes after the explosion, returned to the working place, when it was still full of smoke. He subsequently died from pneumonia, caused by the inhalation of carbon monoxide gas generated by the explosion. It was proved that this gas was generated by the combustion of gunpowder in varying proportions depending on the ventilation, that similar blasting operations were of daily occurrence, and that on previous occasions the deceased had suffered from headache and nausea caused by the gas.
 

 “Held,
 
 that the death was the result of an accident within the meaning of the Act.”
 

 Holding as we do that the record presents evidence of exceptional instances of the emission of carbon monoxide gas resulting in the disability and death of this workman, we conclude that the case is governed by
 
 Industrial Commission
 
 v.
 
 Both, supra,
 
 rather than by
 
 Industrial Commission
 
 v.
 
 Cross, supra,
 
 and the cases in line therewith.
 

 Was the charge of the court prejudicially erroneous ?
 

 The court charged as follows:
 

 “As the court has said to you, the Industrial Commission admits that this man died of carbon monoxide, but they deny that that carbon monoxide was the result of any acts or act of his in connection with his employment. Therefore, if you fail to find that he contracted, or was injured by carbon monoxide in the course of his employment, of course, the plaintiff could not recover and your verdict must be for the Industrial Commission of Ohio.”
 

 The Industrial Commission objects to this charge
 
 *260
 
 upon the ground that the court used the word “contracted” in this paragraph of the charge.
 

 A reading of the charge in its entirety discloses that this objection also is without foundation. The issue which the court submitted to the jury in this particular instruction was the issue as to whether the poisoning was incurred as a result of any acts of Palmer in connection with his employment. In other paragraphs of the charge the court fully charged upon the question as to whether the decedent suffered an accidental injury. Beading the charge as a whole, we conclude that the jury was not misled by the use of the word “contracted” in this particular paragraph, and that its use did not constitute reversible error.
 

 The judgment of the Court of Appeals will therefore be affirmed.
 

 Judgment affirmed.
 

 Wbygandt, C. J., Day, Stephenson, Jones and Matthias, JJ., concur.
 

 Kinkade, J., not participating.