No. 13,668.

INDUSTRIAL COMMISSION ET AL. *v.* ULE.
(48 P. [2d] 803)

Decided August 19, 1935.

Mr. Paul P. Prosser, Attorney General, Mr. M. S. Ginsberg, Assistant, Mr. Harold Clark Thompson, Mr. James D. Parriott, Mr. Robert Kirschwing, for plaintiffs in error.

Mr. Carl Cline, Mr. William E. Lester, for defendant in error.

*In Department.*

Mr. Chief Justice Butler delivered the opinion of the court.

While John L. Ule was working for the City and County of Denver he sustained an injury that resulted in his death. His widow, a dependent, applied for compensation. The Industrial Commission disallowed her claim. The district court vacated the award, and remanded the case to the commission with direction to enter an award in favor of the claimant. The commission, the City and County of Denver and the State Compensation Fund (the insurance carrier) are here seeking a reversal of the judgment.

The following facts are established by the findings of the commission and by undisputed evidence, which we treat as findings of fact *(Prouse v. Industrial Commission,* 69 Colo. 382, 194 Pac. 625; *Winteroth v. Industrial Commission,* 93 Colo. 38, 22 P. [2d] 865): John L. Ule was employed as a wood worker at the Denver Municipal airport. He worked principally in the "dope" shed, where a preparation, called by the witnesses "dope," and which, for the sake of brevity, we shall refer to by that name, was applied to the bodies and wings of airplanes by means of a spray gun. At times Ule assisted in applying the "dope." His exposures to the "dope" were

as follows: October and December, 1932, not more than
five hours each month; November, none; January, Feb-
ruary and April, about five hours each month; March,
none; May, a very short job. His exposure during all
those months did not exceed a total of twenty to twenty-
four hours. At various times between January and May,
1933, Ule showed symptoms of ''dope'' poisoning, but it
did not interfere with his work. On May 21, 22 and 23
Ule was subjected to an unusual and excessive exposure,
two ''dope'' guns being employed, and work on the air-
plane being pushed as rapidly as possible. On the eve-
ning of May 23, he became so ill from ''dope'' poisoning
that he had to be assisted to a car. His lower limbs up
to his knees became numb. He had to quit work on June
7. His disability continued until his death on January 1,
1934, which was the proximate result of the ''dope'' poi-
soning. Cases of airplane ''dope'' poisoning are rare
and unusual, and ''few cases and little about them are
known to the medical profession.'' The only literature
on the subject is contained in Bauer's Manual of Avia-
tion Medicine and a pamphlet published by the United
States Navy. Since May 23, 1933, there has been admin-
istered to employees at the municipal airport exposed to
airplane ''dope'' three quarts of milk each day and a
quantity of whiskey each evening to prevent poisoning.
Prior to that date no such precaution was taken, nor
were respirators or masks furnished to the employees,
presumably because so little was known about the effects
of exposure to the ''dope'' and serious results therefrom
were not foreseen or expected by either the employer or
Ule.

The commission held, as a matter of law, that
Ule's death was not due to accident as defined by law. In
an action to vacate the award, the district court held to
the contrary.

We think the district court was right. The death was
not due to an occupational disease, as contended by the
plaintiffs in error, but to accident.

An occupational disease is one "contracted in the usual and ordinary course of events, which from the common experience of humanity is known to be incident to a particular employment." *Industrial Commission v. Roth*, 98 Ohio St. 34, 120 N. E. 172. It is one "normally peculiar to and gradually caused by the occupation." *Dillingham's Case*, 127 Me. 245, 142 Atl. 865. "One which is due wholly to causes and conditions which are normal and constantly present and characteristic of the particular occupation." *Seattle Can Co. v. Department of Labor and Industries*, 147 Wash. 303, 265 Pac. 739.

There is nothing in the evidence to indicate that the serious disability suffered by Ule on May 23, which resulted in his death, was the natural and reasonably-to-be expected result of his employment; or that his disease was contracted in the usual course of events; or was one which from common experience was or is known to be incident to his employment; or one due wholly to causes and conditions which were normal and constantly present in his employment. Therefore, Ule did not die of an occupational disease.

The exposures to which Ule was subjected on May 21, 22 and 23 were unusual; the number of spray guns used on those days was double the number previously used, and the emission of "dope" spray correspondingly increased. It produced effects that were not intended, foreseen or expected; hence it was an accident. *Carroll v. Industrial Commission*, 69 Colo. 473, 195 Pac. 1097; *Columbine Laundry Co. v. Industrial Commission*, 73 Colo. 397, 215 Pac. 870; *United States Fidelity & Guaranty Co. v. Industrial Commission*, 76 Colo. 241, 230 Pac. 624; *Fidelity & C. Co. v. Industrial Accident Commission*, 177 Cal. 614, 171 Pac. 429; *Johnson Oil Refining Co. v. Guthrie*, 167 Okla. 83, 27 P. (2d) 814; *Barron v. Texas Employers' Ins. Association* (Tex.), 36 S. W. (2d) 464; *Adler v. Interstate Power Co.*, 180 Minn. 192, 230 N. W. 486.

The fact that Ule had inhaled the "dope" spray in

smaller quantities on previous occasions and had felt the effect thereof does not make the injury caused by the unusual and excessive inhalation on May 21, 22 and 23 any the less an accident. *United States Fidelity & Guaranty Co. v. Industrial Commission, supra; Johnson Oil Refining Co. v. Guthrie, supra; Barron v. Texas Employers' Ins. Association, supra; General American Tank Car Co. v. Weirick,* 77 Ind. App. 242, 133 N. E. 391; *Industrial Commission v. Palmer,* 126 Ohio St. 251, 185 N. E. 66.

*Prouse v. Industrial Commission, supra,* is relied upon by the plaintiffs in error as controlling in this case and entitling them to a reversal of the judgment. The facts in that case are different in important particulars from those now before us. There, there was no unusual and excessive inhalation of bad air; the employee had been told by a doctor that he was working too hard in bad air and advised him to lay off, and it was held that the deleterious result was not unexpected; the employee died, not of bad air or poisonous gas, but of septicemia or pyaemia, "the time, place or manner of contracting which" was "not shown by the evidence." All of those circumstances are absent from the record in the present case.

The judgment is affirmed.

MR. JUSTICE HOLLAND and MR. JUSTICE YOUNG concur.