### CASON v. AMERICAN BRAKE SHOE & FOUNDRY CO.

### No. 132.

District Court, D. Colorado.

April 26, 1940.

Charles R. Enos, Henry S. Sherman, Vance R. Dittman, Jr., and Joseph L. Morrato, all of Denver, Colo., for plaintiff.

Wood & Fuller, of Denver, Colo., and Edward L. Wood, of Denver, Colo. for defendant.

SYMES, District Judge.

The charge is that: Defendant operates a foundry for the manufacture of brake shoes, etc., in Denver and employed plaintiff as a laborer from 1923 to 1925, inclusive, and from 1926 to October 8, 1936, inclusive, as a moulder in the foundry. At various times plaintiff also operated the mill or rattlers for the cleaning of brake shoes; he was also engaged in chipping and grinding brake shoes. The plaintiff worked in a closed room where large quantities of sand, silica and special powders were used in moulding, grinding, etc., and a great deal of gas, vapor, dust and other impurities were generated and present in the air. The defendant negligently and carelessly, in violation of its duty to the plaintiff, thus permitted the air in its factory to be unsanitary, injurious, etc., to the health of the employees including the plaintiff, and as a result he inhaled large quantities of silica dust and other impurities, contracted pneumoconiosis, including silicosis, suffered a breakdown and became permanently and totally disabled on or about October 8, 1936. All due to the negligence of defendant in failing to provide plaintiff a reasonably safe place to work, or to install and maintain adequate ventilation, etc.; in spite of the fact it knew, or by the exercise of reasonable care should have known, the effects thereof on plaintiff's health. All to his damage in the sum of $50,000.

Defendant (by motion to dismiss), says relief cannot be granted on this state of facts.

First: Counsel say plaintiff and defendant have accepted the provisions of the Colorado Workmen's Compensation Act (Ch. 97, Art. 7, § 280 et seq., '35 C.S.A.), which by its terms excludes all causes

of action for any injuries whether compensable under the Act or not.

"§ 292 [§ 13 of the Act]. Liability of employer complying with article.—Any employer who has elected to and has complied with the provisions of this article, including the provisions relating to insurance, shall not be subject to the provisions of the last preceding section; nor shall such employer be subject to any other liability whatsoever for the death of or personal injury to any employee, except as in this article provided; and all causes of action, actions at law, suits in equity, and proceedings whatever, and all statutory and common law rights and remedies for and on account of such death of, or personal injury to any such employee and accruing to any and all persons whomsoever, are hereby abolished except as in this article provided."

Let us see. The facts indicate the plaintiff did not sustain a personal accidental injury, his disability, if any, being due to "pneumoconiosis, including * * * silicosis," recognized as an occupational disease, the cumulative effects of unsanitary working conditions over a long period of years, and which unlike an accidental injury, cannot be traced to a definite time, place, and cause. This distinction is recognized in Colorado. Prouse v. Industrial Commission, 69 Colo. 382, 194 P. 625; Carroll v. Industrial Commission, 69 Colo. 473, 195 P. 1097, 19 A. L.R. 107; Columbine Laundry Co. v. Industrial Commission, 73 Colo. 397, 215 P. 870; United States F. & G. Co. v. Industrial Commission, 76 Colo. 241, 230 P. 624; Central Surety & Insurance Corp. v. Industrial Commission, 84 Colo. 481, 271 P. 617; Peer v. Industrial Commission, 94 Colo. 227, 29 P.2d 636; Industrial Commission v. Ule, 97 Colo. 253, 48 P.2d 803; Hallenbeck v. Butler, 101 Colo. 486, 74 P.2d 708.

In the Ule case, supra [97 Colo. 253, 48 P.2d 804], Chief Justice Butler says an occupational disease is one " 'contracted in the usual and ordinary course of events, which from the common experience of humanity is known to be incident to a particular employment.' " "It is one 'normally peculiar to and gradually caused by the occupation.' "

In the Columbine Laundry Co. case, supra, the deceased, an automobile mechanic, was often subject to fumes from exhausts of motor trucks. It was held,

however, an accidental injury was the proximate cause of the death, because the findings showed that on the day in question the weather was cool, the garage door closed and the employee inhaled "an extra large amount of auto gas." [73 Colo. 397, 215 P. 871.] It was therefore traceable to a definite time, place, and cause.

We accept the Colorado authorities as the law of the case. It is not necessary to consider authorities in other jurisdictions. Sec. 292 (supra), says the employer shall not be subject to any other liability whatsoever "for the death of or personal injury to any employee," except as provided in the Act, and then, without the interposition of a period it proceeds to abolish all statutory and common law rights and remedies "for and on account of such death of, or personal injury to any such employee." This, counsel contends, abolishes a right of action for occupational diseases, if one ever existed. For reasons presently stated, we think the quotation is necessarily limited by what has gone before.

Sec. 294 says the right to the compensation provided for in the Act shall apply in all cases where certain conditions enumerated obtain, again indicating the Legislature was only dealing with accidental injuries, and that as to such only was compensation the exclusive remedy. Furthermore § 298 refers to "personal injuries" only, so does not conflict with this view.

And § 293, giving the employer the benefit of common law defenses under certain conditions, seems to contemplate other forms of actions.

 Clearly the Legislature in enacting the Workmen's Compensation Law dealt solely with accidental injuries sustained by an employee in the course of his employment and granted an exclusive remedy therefor. As we have seen the state's highest court distinguishes occupational diseases from accidental injuries and says the Act does not apply to them. So, in the absence of more clear and precise language, we cannot rationalize defendant's contention that the Legislature went out of its way to deprive an employee of a right of action based on an occupational disease without giving him the benefits of the Act.

Authorities are cited to the proposition that no recovery was allowed at common

law for occupational or industrial diseases. That is not entirely correct. True, until comparatively recent times they were unknown to medical science or law, but in the rapid development of sanitary and health engineering were recognized as an economic and legal problem.

■ The common law, as Roscoe Pound points out (The Spirit of the Common Law, 1921), delights to find a remedy for every wrong, combines certainty with power of growth, and "develops a principle for the cause before it, according to a known technique." That is, by the application of rules and doctrines over a series of years. That growth is thus insured, and that limits of the principle of the authority are not fixed once for all, but are discovered by practical workings in actual operation.

And he says further (Harvard Tercentenary Publications, 1937), it is characteristic and universal in the common law to shape legal precepts to a concrete situation "here and now."

Mr. Justice Stone of the Supreme Court points out in the same publication (p. 129), how the common law has been called upon to, and has met more changes of conditions, social and economic in the last 70 years than in the three centuries following the discovery of America and that it is designed to keep up with social change, rapid as it may be.

In Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, Mr. Justice Sutherland emphasizes the flexibility of the common law; that it is not immutable, adapting itself to varying conditions; that this has always been the peculiar boast of the system in the place of its origin. Mr. Justice Frankfurter in Palmer v. Commonwealth of Massachusetts, 308 U.S. 79, 60 S.Ct. 34, 37, 84 L.Ed. ——, says, in effect, we may now cite as authority "the settled social policy both of the states and the nation." It cannot be gainsaid that legal remedies for, and the care of victims of occupational diseases is part of our social policy.

In Jacque v. Locke Insulator Corp., 2 Cir., 70 F.2d 680, 683, Judge Hand said: "Irrespective, however, of any statute, there is a duty at common law to warn and instruct employees and furnish them with means to avoid inhaling elements that are poisonous or injurious to their health, and there was proof that silica dust is such an element. Zajkowski v. American Steel & Wire Co. [6 Cir.], 258 F. 9, 6 A.L.R. 348; Thompson v. United Laboratories Co., 221 Mass. 276, 108 N.E. 1042. In a case like the present, the damage was not occasioned by disease inherent in the occupation but because of neglect to furnish proper instruction and equipment for the prevention of any damage by silica dust."

Cases in other states are not necessarily in point in construing our statute. However, Jones v. Rinehart & Dennis Co., Supreme Court of Appeals of West Virginia, 113 W.Va. 414, 168 S.E. 482, supports the views here expressed. It holds an employee has a right of action at common law for disease contracted by him in the course of his employment and attributable to the negligence of his employer. The opinion points out that 44 states have enacted workmen's compensation laws and in 40 thereof, the exemption of employers is limited to cases in which the employees are entitled to compensation under the acts, and so construes the West Virginia statute.

■ True there is no Federal common law as such (Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487), but Colorado early adopted the common law of England (Chapt. 159, § 1, '35 C.S.A.), and the Supreme Court of the state gives this statute a wide construction, saying (Chilcott v. Hart, 23 Colo. 40, 45 P. 391, 35 L.R.A. 41) the common law of England as found in the cases decided since 1607 as well as those decided before that year, constitutes the rule of decision in this state. The Constitution of Colorado, § 6 of Art. 2 provides, "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; * *." And it would be interesting to speculate upon the right of the Legislature to deprive a citizen of a right of action based on an occupational disease had it attempted so to do.

Occupational diseases being excluded, the employer of course pays no premium for protection against that hazard and to exempt him from liability therefor would tend to foster negligence of a kind likely to produce disease, and render all regulations of working conditions, factories, etc., mere gestures.

■ Second: Sec. 13, C. 97, '35 C.S.A., provides every employer shall exercise reasonable care, etc., comply with all requirements of law and furnish safe places of

684

employment, etc. Section 54 requires those operating factories, etc., where manual labor is exercised in an enclosed room, "shall be provided in each workroom thereof with good, sufficient ventilation and kept in a clean sanitary state, and shall be so ventilated as to render harmless, so far as practicable, all gases, vapors, dust or other impurities, generated in the course of the manufacturing or laboring process carried on therein; and if any factory, mill, workshop, bakery, laundry, store, hotel, school house, theatre, moving picture house, place of public assemblage or any kind of an establishment wherein laborers are employed or machinery used in any enclosed rooms thereof by which dust is generated and inhaled to an injurious extent by the persons employed therein, conveyors, receptacles or exhaust fans, or other mechanical means shall be provided and maintained for the purpose of carrying off or receiving and collecting such dust."

Sec. 52 sets up a Department of Factory Inspection. Sec. 62 of Chapt. 97 provides that in actions brought to recover damages for personal injuries by reason of the violation of any of the above provisions, it shall be sufficient for the plaintiff to prove in the first instance, in order to establish liability, that the injury was the result of the failure of the owner to provide the establishment with safeguards as required by the Act, or that the failure to provide such safeguards directly contributed to the injury, etc. Thus, the Legislature recognizes occupational diseases as such, provides preventive measures, with penalties for their violation.

Defendant contends these acts violate due process under both the state and Federal Constitutions, in that they are uncertain, the standards set up are vague and unintelligible, and do not provide a reasonable, certain or standard guide for the conduct of those affected. These contentions are premature, at least until compliance is attempted, or we have heard expert testimony. The statutory requirements enumerated seem to be non-technical, plain and sufficiently definite.

As stated by the United States Supreme Court in Gant v. Oklahoma City, 289 U.S. 98, at page 102, 53 S.Ct. 530, 77 L.Ed. 1058, the courts have nothing to do with whether the requirements produce hardships in particular instances, and if, as we believe, there is at least room for fair debate, we cannot say the requirements are clearly arbitrary and unreasonable, and

substitute our judgment for that of the legislative body charged with the primary duty and responsibility of determining the question. See City of Atlanta v. National Bituminous Coal Comm., D.C., 26 F.Supp. 606, and cases cited at page 610; also Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232.

We conclude that in Colorado an employee has a right of action against an employer for an occupational disease contracted in the course of employment and due to the employer's negligence.

This being so, the six-year statute of limitations applies.

The motion is overruled.