No. 15,162.

PITCHFORTH ET AL. *v.* MACOMB ET AL.
(137 P. [2d] 1021)

Decided May 17, 1943.

Mr. EDWARD L. WOOD, for plaintiffs in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. J. RAMSAY HARRIS, Assistant, for the Industrial Commission.

Mr. GEORGE DONART, Mr. FREDERICK P. CRANSTON, for defendant in error Macomb.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is a workmen's compensation case in which Tom Macomb, one of the defendants in error, was awarded compensation for permanent disability allegedly caused by his contracting the disease of tularemia while shearing sheep for R. H. Pitchforth, employer, one of the plaintiffs in error. The award of the commission was sustained by the trial court and Pitchforth and The Ocean Accident and Guarantee Corporation, Limited, the insurance carrier, seek reversal on a writ of error.

Briefly stated, the facts and circumstances which gave rise to the action are as follows: In the spring of 1940, Pitchforth, a sheep rancher in northwestern Colorado, contracted with a William Jackson of Weiser, Idaho, for the shearing of his sheep—Jackson to furnish the shearing equipment and crew for performing the labor. Claimant was a member of the crew. They started the season March 7th by shearing sheep at the Nicholson ranch in Utah. The Pitchforth job in Colorado lasted from April 20th to May 1st. Claimant returned from Colorado to his home in Idaho, and then went to a neighboring ranch where he commenced work about May 6th, and it was while engaged at the latter place, and on May 6th or 7th, that he was compelled to discontinue work on account of illness, although he was ill before he left the Pitchforth place. While the shearers

were working on the Pitchforth job there was considerable rain and snow and operations continued sometimes when the sheep were wet and steamy. Claimant's theory is that he contracted tularemia through the inhalation of the warm, steamy air given off by the sheep, claiming that "warmth and moisture are the factors most conducive to keeping an organism alive." It was not until some time after claimant stopped working that his illness was diagnosed as tularemia, which diagnosis was later confirmed by laboratory tests. Claimant's physician testified that in her opinion he "had this disease on May 10, 1942," the date he first consulted her.

It is obvious that claimant relies upon the theory that his injury is analagous to that of injury by poisonous or noxious gas. In fact, his counsel says: "The instant case is a 'noxious gas' case." The assertion that the vapor arising from wet sheep is a noxious or poisonous gas within the meaning of the adjudicated cases on the subject is not based upon any reasonable or plain meaning of those words. Certainly it is unreasonable to compare the vapor arising from these wet sheep to the deadly monoxide gas that comes from the exhaust pipe of an automobile which was involved in the case of *Columbine Laundry Co. v. Industrial Commission,* 73 Colo. 397, 215 Pac. 870, or with the poison "dope" which caused the disability in the case of *Industrial Commission v. Ule,* 97 Colo. 253, 48 P. (2d) 803, where the employees had to be given "three quarts of milk each day and a quantity of whiskey each evening to prevent poisoning." No other Colorado cases are relied upon by claimant as sustaining his position on this point. The commission discarded this alleged "noxious gas" theory when it adopted the findings and order of its referee wherein it was stated: "It is not clear whether he [claimant] contracted the disease from breathing the fumes and steam that rose from the wet sheep," and does not base its finding on that ground.

The other theory upon which claimant relied for

recovery was that, the established facts in this case bring it within the test laid down by this court in *Prouse v. Industrial Commission,* 69 Colo. 382, 194 Pac. 624, where recovery was denied to a claimant, the death of whose husband resulted from septicemia contracted while he was working in a coal mine. In connection with that case, however, we desire to point out that even under the contentions of Mr. Justice Scott, as set forth in his exhaustive dissenting opinion therein, recovery in the case at bar could be had only under the case of *Vennen v. New Dells Lumber Co.,* 161 Wis. 370, 154 N.W. 640, in which case it appears that the claimant was alleged to have contracted typhoid fever by drinking infected water from a well on the premises of the employer; however, that case was decided on the pleadings, and there is a strong dissenting opinion in line with the Prouse case, supra.

Claimant contends that the facts here show that the contraction of the disease was definite as to time, place and cause, and therefore, an accident. To fix the time, he relies upon the incubation period of the tularemia germ. It is admitted there was no bite, cut or abrasion of claimant's body through which the germ could enter, and since the commission itself discards the breathing or inhalation theory, there remains only the theory of absorption "from handling the sheep" which the commission says was the more probable cause. We think the so-called finding of the commission is in itself a conjecture, and when we analyze the reason urged by the commission and claimant's counsel to support it, the finding that the claimant contracted tularemia while shearing the Pitchforth sheep becomes even more conjectural. For instance it is argued that because the period of incubation of the tularemia germ is from one to nine days—the average three and one-half days — that the conclusion is inescapable that he contracted the disease while shearing the Pitchforth sheep. There are several flaws in this argument.

There is no direct evidence in the record that any of the Pitchforth sheep were carriers of the disease: there is only the testimony that a small percentage of sheep are carriers. There is no direct testimony that claimant had tularemia when he left the Pitchforth job on May 1st, and since his own physician fixes the date of his having tularemia as May 10, that would still be exclusive of the maximum period of incubation by one day. Granting that some of the possibilities of other sources of infection were eliminated, since it was necessary for claimant to travel through an "area of infection" on his return to Idaho it is only fair to say that not all other possible sources of infection were excluded. The only reported case that we are able to find wherein the incubation theory alone was relied upon by the claimant as being the cause of his disability, is that of *Miller v. Ralston Purina Co.*, 341 Mo. 811, 109 S.W. (2d) 866, and in that case the theory was rejected. In the Utah and Idaho cases *(Salt Lake County v. Industrial Commission,* 101 Utah 167, 120 P. [2d] 321, and *Estate of Puckett v. Tesemini Timber Protective Association,* 59 Ida. 529, 84 P. [2d] 566), it appears that the claimants suffered insect bites preliminarily to infection.

It is to be noted that in the only two compensation cases, which we have found, where recovery was favored and where tularemia was claimed as the cause of the alleged injury, the claimant had cuts or abrasions on his hands and had been handling infected animals. *Metropolitan Casualty Ins. Co. v. Crenshaw,* 44 Ga. App. 354, 161 S.E. 649; *Great Atlantic and Pacific Tea Co. v. Sexton,* 242 Ky. 266, 46 S.W. (2d) 87.

In conclusion, we say that the line of demarcation between an "accident" within the meaning of our act and a "disease" must be drawn as suggested by Judge Cardozo when he said in *Matter of Connelly v. Hunt Furniture Co.,* 240 N. Y. 83, 147 N.E. 366, 39 A.L.R. 867: "We have little doubt that common understanding would envisage this mishap as an accident, and that

common speech would so describe it. Germs may indeed be inhaled through the nose or mouth, or absorbed into the system through their normal channels of entry. In such cases their inroads will seldom, if ever, be assignable to a determinate or single act, identified in space or time * * *. For this, as well as for the reason that the absorption is incidental to a bodily process both natural and normal, their action presents itself to the mind as a disease, and not an accident. Our mental attitude is different when the channel of infection is abnormal or traumatic, a lesion or cut. If these become dangerous or deadly by contact with infected matter, we think and speak of what has happened as something catastrophic or extraordinary, a mishap or an accident * * *, though very likely a disease also. 'A common-sense appraisement of everyday forms of speech and modes of thought must tell us when to stop.' "

For claimant's failure to sustain the burden of showing that his illness was the result of an accident within the meaning of our Workmen's Compensation Act, the judgment is reversed and the cause remanded to the lower court with instructions that the case be remitted to the Industrial Commission with directions to vacate its award and dismiss the claim.

Mr. Chief Justice Young, Mr. Justice Knous and Mr. Justice Hilliard dissent.