Stephenson, J.
 

 The Industrial Commission claims that the judgment of the Court of Appeals should be reversed for three reasons:
 

 First, that the Common Pleas Court erred in admitting into its record the testimony of the decedent, Joseph Bartholome, taken at the rehearing before the Industrial Commission on August 19, 1930, in connection with his application for compensation, which was prior to and a separate action from the one which the widow now brings.
 

 Second, that the Common Pleas Court erred in allowing certain hypothetical questions to be answered by one of claimant’s witnesses, Dr. Moore, for the rea
 
 *17
 
 son that such hypothetical questions did not state facts supported by the evidence.
 

 Third, that the Common Pleas Court erred in overruling the motion of the Industrial Commission for a directed verdict at the close of the plaintiff’s testimony.
 

 The decisive question in this ease is whether or not Joseph Bartholome’s testimony taken at the rehearing was admissible in evidence in Emma Bartholome’s case.
 

 The first proposition for determination is whether or not Bartholome’s case was compensable. If it was not, then Emma Bartholome’s case can not stand. Counsel for the Industrial Commission contend that there was no
 
 personal injury
 
 by accident in Bartholome’s'case, and that he was not entitled to compensation. A long list of cases is cited in support of this contention, beginning with the case of
 
 State, ex rel. Yaple,
 
 v.
 
 Creamer, Treas.,
 
 85 Ohio St., 349, 97 N. E., 602, 39 L. R. A.
 
 (N.
 
 S.), 694, and ending with
 
 Industrial Commission
 
 v.
 
 Franken,
 
 126 Ohio St., 299, 185 N. E., 199.
 

 It has been repeatedly held by this court that workmen’s compensation does not come to claimants in the form of a pension. In other words, it is not the “wear,” but the “tear,” that is compensable, leaving occupational' diseases out of consideration as a matter of course. Bartholome undoubtedly died of tuberculosis. The Industrial Commission contends that as he had worked at his same occupation for a number of years the tuberculosis resulted from the breathing of dust and soot over a long period of time. If that be true, Bartholome would not be entitled to compensation. Bartholome’s contention was to the effect that he was overcome by the fumes and gas which had accumulated in the combustion chamber, and that while in such condition he inhaled soot and fine ashes into his lungs, which caused him to contract tuberculosis,
 
 *18
 
 or aggravated a latent tubercular condition. Herein lies a dispute of fact, and there is credible testimony to -support both theories.
 

 Bartholome did not go into this combustion chamber every day. He entered it just twice a year. It was probably his business to see that the chamber was not heated and that it was free from gas and fumes before he entered it, but the fact that he may have failed to perform his duty along this line does not deprive him of compensation if he is otherwise entitled to it.
 

 Reasonable minds might well arrive at different conclusions from the testimony along this line. If Bartholome in the performance of his duties had been required to enter this combustion chamber every day and breathe the gas and fumes complained of, and inhale a certain amount of ashes, dust and soot, a different case would be presented.
 

 It will be borne in mind that we are considering Bartholome’s testimony in determining whether or not his case was compensable.
 

 We are not without precedent on the proposition of the inhalation of gas and fumes. It is probably safe to assume that a stationary engineer, or assistant custodian, as you may be pleased to designate, in the performance of the ordinary duties required of him would breathe some gas and fumes, and possibly some dust and ashes; but we must conclude that such inhalation would be negligible. However, he was called to perform an extraordinary duty, to clean out the combustion room. Such work was within the scope of his employment, but it was unusual. This combustion room was unventilated and hot. He says there was gas there, generated from the heat. He fell into the soot and dust, inhaled it, and shortly thereafter developed a violent coughing spell, and continued to cough. We cite the case of
 
 Industrial Commission
 
 v.
 
 Palmer,
 
 126 Ohio St., 251, 185 N. E., 66:
 

 
 *19
 
 “Where it is disclosed, by the evidence that a workman, in the course of his employment, was subjected to unusual emissions of carbon monoxide gas upon two specific occasions, and that his disability and death resulted therefrom, an award of compensation under the Workmen’s Compensation Act will be sustained.
 

 “Where the disability or death is attributable in whole or in part to such injury from carbon monoxide gas, the fact that but for such injury the claimant might have been disabled or died from a chronic case of carbon monoxide gas poisoning will not prevent compensation. In such case the .compensation is awarded for the injury, and not for the disease.”
 

 This was a coke furnace case. Palmer naturally breathed some of the gas fumes regularly, but on two specific occasions he was subjected to two severe attacks of gas, and he died from carbon monoxide poisoning. It was clearly and properly held that he was entitled to compensation for the injury and not the disease.
 

 There is yet another and later case, namely,
 
 Industrial Commission
 
 v.
 
 Helriggle,
 
 126 Ohio St., 645, 186 N. E., 711. This was a mining case. A new explosive was being tried out. It was held that this experimentation produced a sudden and unusual hazard to which decedent was exposed. He died from carbon monoxide poisoning, and judgment in favor of the dependents was affirmed on the authority of
 
 Industrial Commission
 
 v.
 
 Palmer, supra.
 

 We quite agree that there is some distinction between these cases and the case now before us, in that Palmer and Helriggle died from carbon monoxide poisoning, whereas Bartholome died from tuberculosis. The carbon monoxide poisoning was directly traceable to the inhalation of the gas in question. Whether the tuberculosis in Bartholome’s case was directly traceable to the inhalation of gas, fumes, soot and dust was a question of fact.
 

 
 *20
 
 There is a scientific theory that each and every human body is infested with tubereules, otherwise denominated Koch’s baccilla, in a la,tent state, and that a proper field must be furnished before they become active. The pulmonic area is the natural field for the tubercle, and physical resistance determines the result of the fight between the tubercle and the individual.
 

 Assuming that this theory is correct, and we have no reason to doubt it, the introduction of an infection into the lungs by whatever process would, in common probability, according to some of the medical testimony in the record, produce a condition calculated to invite tubercular activity. Such is the essence of the charge in this case. There is likewise testimony in the record that Bartholome’s “lung condition” caused his death. There is some testimony in the record to the effect that Bartholome, for quite a number of years prior to 1917, worked as a tool-dresser and developed a lung abscess, and that during the time he worked as a tool-dresser he had developed “silisosis” or “stone-lung,” the usual terminatioh of which is tuberculosis. But the time element weakens this contention, as Bartholome was able to work for fourteen years after he quit work as a tool-dresser.
 

 We must conclude from the record that Bartholome had a compensable case, and Emma Bartholome, his dependent, likewise is entitled to compensation if she can prove her claim.
 

 Unless she is permitted to have the benefit of her deceased husband’s testimony, taken during the prosecution of his claim, she must fail, as there is no living witness who can be of assistance to her.
 

 There is no statutory license, for the admission of this testimony. It could have been perpetuated under the statute, Sections 12216 to 12222, inclusive, General Code, but it was not.
 

 The trial court admitted Bartholome’s testimony over the objection of the Industrial Commission. The
 
 *21
 
 Court of Appeals approved the action of the trial court. Was such admission erroneous?
 

 We enter this realm of discussion bearing in mind that all law relating directly or indirectly to the right of employees to participate in the workmen’s compensation fund must be liberally construed, to the end that the purposes for which the fund was created may be subserved.
 

 The rigor of the common law rules of evidence has undergone much relaxation in order to meet the demands of an ever-changing civilization. Exigencies have arisen from time to time, and will continue to arise, wherein a strict adherence to the established rules of evidence would defeat the very purpose for which the law was enacted and work injustice in cases which the most sagacious minds could not foresee.
 

 The right of an employee, or, in case of his death, the right of the dependent, is not so much a right to so many cold dollars, but a right to participate in a fund that was created for his benefit. While he did not express it in so many words, Judge Johnson must have had this thought in mind when he expressed the fourth proposition of the syllabus in the case of
 
 Industrial Commission
 
 v.
 
 Weigandt,
 
 102 Ohio St., 1, 130 N. E., 38:
 

 “The statute was intended to provide a speedy and inexpensive remedy as a substitute for previous unsatisfactory methods, and should be liberally construed in favor of employes.”
 

 A claimant may have a case-as “plain as daylight,” where there is no witness in existence who can testify as to the time, place and manner in which the injury was received, other than the claimant. The claimant testifies and establishes a compensable case beyond cavil, and dies before an award is made. He has collected nothing. The fund was created as well for the benefit of the dependent as for the claimant. The claimant’s testimony, constituting all the evidence as
 
 *22
 
 to the compensability of the claim, not being admissible in dependent’s case, she is denied recovery. This presents a harsh scene to the ordinary mind. The claimant passes on without receiving one penny. .Knowing, or at least feeling, that his case was compensable, his passing is rendered endurable by the belief that the compensation which would have been his, had he lived, under the humanitarian provisions of the law will at least provide for his life partner some degree of comfort in the years to come. Does not such a state of fact call for the interposition of the rule of reason?
 

 We recognize and adhere to the principles announced in the case of
 
 Industrial Commission v. Davis,
 
 126 Ohio St., 593, 186 N. E., 505, namely:
 

 “Such causes of action are separate and independent, neither being dependent upon nor affected by the determination of the other.”
 

 We are likewise not unmindful of the case of
 
 Coutellier
 
 v.
 
 Industrial Commission,
 
 126 Ohio St., 546, 186 N. E., 400. It was therein held that “declarations of a decedent made to his physician or others, narrating the cause which is claimed to have contributed to his death, are self-serving and inadmissible, unless they are made under such circumstances as to cause them to be a part of the
 
 res gestae.”
 

 This is good law. It has withstood the assaults of time, but it must be borne in mind that in the case before us we are dealing with something more than the declarations of a deceased person. The first sentence of the second proposition of the syllabus in the
 
 Coutellier case
 
 reads as follows:
 

 “A report or application blank furnished by the Industrial Commission, which the commission requires to be filled out and signed by the applicant, his physician and employer, is admissible evidence.”
 

 Judge Jones, who wrote the opinion, in his reasoning says: “This application was upon a printed form
 
 *23
 
 furnished by the commission and was required to be signed by the applicant, the attending physician and the employer. No doubt its purpose was to secure adequate knowledge of the nature and character of the injury and how it was sustained.”
 

 In other words, the applicant in signing the application was complying with a requirement of the Industrial Commission, made as much for its own benefit as for the benefit of the claimant. That it was a routine matter made in the course and conduct of a business, became a public record, and these facts sufficiently vouched for its genuineness and made it admissible in evidence against the Industrial Commission.
 

 Section 1465-40, General Code, provides that the Industrial Commission shall be in continuous session and open for the transaction of business during all the business hours of each and every day except Sunday and legal holidays.. “All proceedings -of the board shall be shown on its record of proceedings,
 
 which shall be a public record
 
 and shall contain a record of each case considered, and the award made with respect thereto * * .”
 

 Section 1465-44, General Code, provides as follows:
 

 “The board shall adopt reasonable and proper rules to govern its procedure, regulate and provide for the kind and character of notices, and the services thereof, in cases of accident and injury to employes, the nature and extent of the proofs and evidence, and the method of taking and furnishing the same, to establish the rights to benefits of compensation from the state insurance fund,' hereinafter provided for, the forms of application of those claiming to be entitled to benefits or compensation therefrom, the method of making investigations, physical examinations and inspections, and prescribe the time within which adjudications and awards shall be made.”
 

 Section 1465-47a, General Code, provides that the commission may at any time designate and appoint
 
 *24
 
 referees to conduct hearings, rehearings and investigations, with the same powers as members of the commission in connection with such hearings, rehearings and investigations, with authority to administer oaths, take testimony, take depositions, require the attendance of witnesses and the production of documents, and, when required by law or the commission, claimant or employer, he shall submit to the commission a complete transcript of the hearing, with a report setting forth his findings of fact and conclusions of law.'
 

 In these grants of statutory authority we find that the Industrial Commission is required to keep a record of each case. That such file is a public record. Being a public record, we have a right to assume that it will be preserved and perpetuated. The Industrial Commission can make rules as to the nature and extent of proofs, methods of investigation, etc.
 

 We must conclude that the Industrial Commission arranged all the machinery, under its statutory power, for the taking of Bartholomew testimony; that it was taken by one of the commissionW referees; that the commission was represented at such hearing by counsel, who' cross-examined Bartholome; that a transcript of the hearing, containing Bartholomew testimony, was made by the referee and delivered to the commission; that a record has been or will be made from the files and transcript of the case, and such file will be a public file which will be preserved and perpetuated. •
 

 The transcript herein is nothing more nor less than a bill of exceptions and is governed by the statutes relating to bills of exceptions. Such transcript should be filed and preserved as a file, but not made a part of the record. This holding in no wise curtails the right of the Industrial Commission to provide rules for the destruction of files of cases as provided by Section 1465-86, G-eneral Code, as amended at page 423 of Volume 115, Ohio Laws.
 

 So far as we have been able to find, no case in
 
 *25
 
 volving the question herein presented has been passed on by the court of last resort of any state of the United States. However, the case of
 
 Corporation of Town of Walkerton
 
 v.
 
 Erdman, Exrx.,
 
 23 Canada Supreme Court Reports, 352, bears directly upon the question.
 

 A brief statement of the facts in that case is deemed necessary. John Erdman fell into an excavation in one of the streets of Walkerton. He sued the town for damages. His physical condition became bad. His deposition
 
 de bene esse
 
 was taken, upon notice to the solicitor for the town. The town was present by counsel, and cross-examined Erdman. Erdman subsequently died. The widow, executrix under his will, brought suit against the same parties, under Lord Campbell’s Act, for damages for wrongful death. At the trial, the deposition of Erdman, taken in his case, was offered in the wrongful death ease, was rejected, and the executrix was non-suited. The non-suit was set aside by the Division Court, and such judgment was affirmed by the unanimous judgment of the Court of Appeals, which judgment was affirmed by the Supreme Court of Canada, by a divided court, three affirming and two dissenting. Justice King predicates his opinion on Taylor on Evidence, Section 464, namely:
 

 “Where a witness has given his testimony under oath in a judicial proceeding, in which the adverse litigant had the power to cross-examine, the testimony so given will, if the witness can not be called, be admitted in any subsequent suit between the same parties, or those claiming under them, provided it relate to the same subject
 
 or substantially involve the same material questions
 

 Then he quotes Stephen on Evidence, Article 32, namely:
 

 “Evidence given by a witness in a previous action is relevant for the purpose of proving the matter
 
 *26
 
 stated in a subsequent proceeding, when the witness is dead * * *.
 

 “Provided in all cases—
 

 “ (1) That the person against whom the evidence is to be given had the right and opportunity to cross-examine the declarant when he was examined as a witness;
 

 “(2) That the questions in issue were substantially the same in the first as in the second proceeding;
 

 “Provided also—
 

 “(3) That the proceeding, if civil, was between the same parties or their representatives in interest.”
 

 Apply the reasoning to the case before us. The proceeding in which Bartholome’s testimony was taken was at least a quasi-judicial proceeding. The Industrial Commission was present by counsel and subjected Bartholome to' cross-examination. The questions in issue in Emma Bartholome’s case were the same as in her deceased husband’s, with possibly the one added question, “Did the injury complained of in the husband’s case cause the death complained of in the dependent’s case?”
 

 Quoting again from the Canadian case,
 
 supra:
 

 “But while the present cause of action is new and different from that brought in his lifetime by Erdman it is nowhere stated that the causes of action are to be identical in order to render admissible in a later action evidence given in an earlier one.”
 

 The case before us is really stronger than the case from which we quote. The same statute that gave Bartholome the right to compensation had he lived, gives it to his widow in case of death. She is compensated for the death from the particular injury, while he would have been compensated for the particular injury.
 

 More than that, the deposition in this case was taken by a duly authorized officer of the Industrial Commission, under a statutory set-up. This deposition must
 
 *27
 
 be preserved and perpetuated as a public record. Its genuineness is enhanced by the fact that it was taken in routine in the course of business of the commission.
 

 The demands of public policy alone are not strong enough to warrant a departure from the established rules of evidence, unless and until an adherence to such rules works injustice.
 

 If Bartholome’s case was compensable, and we find that it was, then his dependent should recover if she can trace his death to the injury for which he would have been compensated, had he lived; for the fund was created as much for the benefit of the.dependent as for the original claimant.
 

 Under the facts and circumstances of this case this court holds that the deposition of Bartholóme, taken in his proceeding for allowance of compensation, was admissible in this case for all the purposes for which it was admissible in his case.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Allen, Jones, Matthias, Bevis and Zimmerman, JJ., concur.