INDUSTRIAL COMMISSION OF OHIO *v.* ACKERMAN.

(Decided May 27, 1935.)

*Mr. Frank E. Calkins,* for plaintiff in error.
*Messrs. Yager, Bebout & Stecher,* for defendant in error.

OVERMYER, J. On October 29, 1930, Greeley D. Ackerman was an employee of The Kruger Stamping Company as a mechanic and die-maker, and had been so employed for six years. The company sent elsewhere its larger dies for tempering, but the smaller ones were tempered in the shop of the company by means of a small, portable hand forge, about three feet high and about fifteen inches in diameter, in which charcoal was used for fuel. Mr. Kruger usually did such tempering as was done at the shop, but in his absence Ackerman did this work. Charcoal had been used in the operation of this forge for thirty-five years. The charcoal was placed on top, and by a hand lever a blow-wheel below the fire was operated to force air through the fire, causing a combustion of the carbon of the charcoal and the oxygen of the air. By this operation some carbon monoxide gas was produced and released. No flue had ever been provided to carry fumes away. The dies were placed in this fire by the operator, and heated by means of the blower, and when they had reached the proper temper-

ature they were removed with a pair of tongs and dipped into fish oil. The evidence shows that in the operation described the operator would stand near to the top of the forge and the fire, and that the forge was located in a room about twenty feet square, which one witness described as being at times "quite stuffy." The tempering was done as the work required, and sometimes for some weeks no tempering was done, while at other times it was done for some consecutive days.

Anna Ackerman, claimant in the court below, is the widow of Greeley D. Ackerman, and in her petition in the Common Pleas Court she alleged the following:

"That on the 29th day of October, 1930, and for some time prior thereto, her husband was in the employ of The Kruger Stamping Co., and was engaged in general machine work and die work; that on said date he was engaged in hardening a die over an open charcoal forge which emitted fumes consisting of carbon monoxide gas, which her said husband inhaled, causing him to be partially overcome and to be extremely ill; that said fumes severely injured the tissues of his lungs, which resulted in her said husband suffering from pulmonary tuberculosis from which he died on June 27, 1932."

She alleged further that claim was made before the Industrial Commission, and that the same was denied on hearing and rehearing. The appeal in the Common Pleas Court resulted in a verdict and judgment for the claimant, and from that judgment error is prosecuted by the commission, the grounds of error urged being that the court should have sustained the motion of the commission for a directed verdict for the reason that the evidence does not show that Ackerman suffered any accidental injury; that his pulmonary tuberculosis was not shown to have been caused by nor to have arisen out of his employment, and that

the pulmonary tuberculosis suffered by him was a non-compensable disease.

The issues here presented require a careful search of the evidence to determine whether this case falls within that class of cases where compensation has been consistently denied under the decisions of the Supreme Court because of death resulting from an occupational disease which was not compensable under the statute, or whether there was an injury accidental in its origin and cause which proximately caused the death, thereby making the injury compensable.

We have made a careful search of the record, and a majority of this court conclude that an analysis of the evidence in the record resolves the issue against the claimant in the light of the recent cases of *Industrial Commission* v. *Bartholome,* 128 Ohio St., 13, 190 N. E., 193; *Industrial Commission* v. *Palmer,* 126 Ohio St., 251, 185 N. E., 66; *Industrial Commission* v. *Helriggle,* 126 Ohio St., 645, 186 N. E., 711; and *Industrial Commission* v. *Middleton,* 126 Ohio St., 212, 184 N. E., 835.

The *Bartholome case* is a tuberculosis case where decedent was required only twice a year to go into a combustion chamber of the heating boiler of the school building where he was assistant custodian, either by crawling over the grates of the boiler or through a man-hole in the combustion chamber, and to clean out the soot and ashes there accumulated, in some places up to his waist line. On June 15, 1929, he entered this chamber, was overcome by gases and fell in the soot and inhaled into his lungs large quantities of soot, dust and ashes. He managed to get out of the chamber, but before leaving, and after leaving it, he coughed violently and spit up "black-stuff" or soot. He died from tuberculosis on March 11, 1931, a year and nine months after the incident of June 15, 1929. Compensation was allowed the widow, and in the opinion of

the Supreme Court appears this significant language:

"Reasonable minds might well arrive at different conclusions from the testimony along this line. If Bartholome in the performance of his duties had been required to enter this combustion chamber every day and breathe the gas and fumes complained of, and inhale a certain amount of ashes, dust and soot, a different case would be presented. * * * However, he was called to perform an extraordinary duty, to clean out the combustion room. Such work was within the scope of his employment, but it was unusual."

The *Palmer case* was a carbon monoxide case, where the decedent, working in a coke furnace regularly, breathed some of the gas fumes regularly, but on two specific occasions he was subjected to two severe attacks of gas, "unusual emissions of carbon monoxide gas," and died from carbon monoxide poisoning. The Supreme Court held he was entitled to compensation for the injury, not for the disease. In the Supreme Court opinion in this case, page 254, the court says:

"If this were all the testimony upon the point that the decedent was subjected to emissions of carbon monoxide gas, and if there were not evidence in the record of unusual emissions of gas upon certain specific occasions, recovery would have to be denied under the authority of the Ohio decisions previously cited."

The *Helriggle case* was a carbon monoxide case, where in mining operations a new explosive was being tried out, and in allowing compensation it was held that the experiments with the new explosives produced a sudden and unusual hazard to which decedent was exposed.

In the case now before us there is no evidence in the record that Ackerman had a latent case of tuberculosis, which furnished a proper field for tubercle activity by the introduction of an infection, as in the *Bartholome case,* nor is there any evidence of "un-

usual emissions of carbon monoxide gas" or "a sudden and unusual hazard * * * to which the decedent was subjected" as in the *Palmer* and *Helriggle* cases respectively.

The *Middleton case* was one of facial paralysis due to the usual and ordinary conditions of Middleton's work. It was held not compensable because not brought about by any sudden or unusual happening different from other happenings on days of his employment. See also *Paxton* v. *Spicer Mfg. Corp.*, 45 Ohio App., 359, 187 N. E., 193, and *Ewers, Admx.*, v. *Buckeye Clay Pot Co.*, 29 Ohio App., 396, 163 N. E., 577.

In the instant case the decedent was engaged in his usual and regular duties, with the same tools and equipment and in the same room that particular work was done on other days. No unusual hazard or danger was present on that day that was not equally present on other days, the only difference being that near quitting time he got sick, looked pale, quit work and went home, spent a restless night, and did not return to work for a few days. For all the record shows, the placing of red-hot irons in fish oil might have produced odors that would bring on nausea and produce the same result.

From the evidence in the case, the majority of the court are of the opinion that if the pulmonary tuberculosis from which the decedent died was the result of poisoning from carbon monoxide gas produced at the forge in question, it came through a slow process through the years and not from any unusual circumstance on October 29, 1930. No such unusual circumstance is shown except that he was ill.

The only witness who was present with Ackerman the afternoon of October 29, testified that the conditions at the forge and in that room were the same as on every other day and that Ackerman himself said

nothing about getting any gas or fumes, and the witness said "I didn't mean he couldn't walk or anything, just wasn't able to go on with the work any more, didn't feel like working." The witness further said the only odor he noticed was from the fish oil.

The evidence shows that a few days following October 29, 1930, Ackerman returned to the same duties. The widow testifies that "for a few weeks I didn't notice anything so very different." He then became listless and developed some cough and fever, but did not consult a physician until January 26, 1931, and some treatment was given, but it was not until May 25, 1931, that X-ray and sputum examinations definitely disclosed pulmonary tuberculosis. He had worked "whenever there was work for him to do" at the same duties up to that time, then left the employment. As before stated, he died June 27, 1932.

Pulmonary tuberculosis is not in itself a compensable disease, and of course outside of those compensable diseases named in the statute, no compensation is allowed except for an accidental physical injury. *Industrial Commission* v. *Middleton, supra.*

Dr. Paul Holmes, a specialist on diseases of the lungs, testified that he examined decedent on August 9, 1930, more than two months before the alleged injury, for the Life Extension Institute, and with reference to that examination he said:

"Q. At the time of that examination, Doctor, did you find anything wrong with his lungs? A. No.

"Q. Doctor, what was the nature of this examination? It wasn't very thorough, was it? A. Well, it was a general physical examination. Didn't include laboratory, X-ray and all that.

"Q. If he had a latent tuberculosis at that time, wouldn't know it unless you took an X-ray? A. No."

Other witnesses testified that Ackerman had been in apparent good health up to October 29, 1930.

We find that there is no evidence that the death of decedent was due to any physical injury or bodily impairment accidental in its cause and origin, arising out of and in the course of his employment, and therefore the court below should have sustained the motion of the commission for judgment in its favor.

The judgment will be reversed and the cause remanded with directions to dismiss the appeal and enter final judgment for the commission.

*Judgment reversed and cause remanded.*

LLOYD, J., concurs.
CARPENTER, J., dissents.