PICCHETTI, APPELLANT, *v.* PITTSBURGH PLATE GLASS CO.,
COLUMBIA-SOUTHERN CHEMICAL CORP., APPELLEE.

(No. 847—Decided December 18, 1957.)

*Mr. John F. Locke,* for appellant.
*Mr. Thomas J. Duffy,* for appellee.

PUTNAM, J.   Plaintiff's action below was to participate in
the State Insurance Fund by reason of the death of her hus-
band while he was working at his job as a "shooter" in a mine

of the defendant, a self-insurer. The jury returned a verdict for the defendant and this appeal on questions of law results, with the following assignments of error.

1. The finding of the court and jury is contrary to the manifest weight of the evidence and is contrary to law.

2. The findings of the jury were improperly influenced by misconduct of the defense counsel.

3. The court erred in permitting to go to the jury "Exhibit A" when the same was not properly "masked" according to stipulation.

4. There was no probative evidence of arterio sclerosis or pre-existing heart condition and all evidence relative thereto should have been stricken and all arguments relative thereto were improper.

5. The court erred in failing to give special request No. 4 submitted in writing before argument.

Briefly, the facts as shown by the record are that the plaintiff's decedent worked the night shift as a shooter on a crew working a coal face from 42 to 46 inches high; that the crew consisted of at least a driller, a cutter, a shooter and loader; that the mining operation was to drill holes in the face for the cardox shells, undercut and perhaps overcut the coal, shoot the coal down and load it into cars and haul it away; and that the drilling, cutting and shooting produced fine coal dust known as "bug dust" which filled the air. Until a decade or so ago coal was shot down with gun powder, but now days, in modern mines, it is shot down with cardox or similar shells containing carbon dioxide under high pressure, the sudden release of which produces an expansive force which pushes the coal down without the shattering effects of gun powder. This is not an explosion in the sense that it is a result of a chemical reaction, but it does result in the sudden release of a large amount of carbon dioxide gas. Carbon dioxide exists in normal air in a low concentration and is not poison, but when its concentration becomes heavy the air does become poisonous and will not sustain life, because the carbon dioxide supplants the oxygen. It is heavier than air and seeks its lower level. This would be especially true in a low-ceiling room. In the instant case the ceiling was so low the decedent was forced to crawl therein to insert his shot shells which

were about the size of a large baseball bat. It is obvious that an extra concentration of carbon dioxide from excessive shooting would poison the air in the particular room. On the night in question the crew on this shift in this particular room was trying to make a record. They produced 169 cars, whereas the normal production was only 100-125 cars. Consequently, it can be inferred that extra strain was on the crew and also that a concentration of carbon dioxide and "bug dust" was heavier in this room during this shift.

Near the end of the shift, plaintiff's decedent was found dead in the entry outside the room where he was required to be to touch off a shot and where he was about to set off another shot or had just done so.

The death certificate showed that he died of a "coronary occlusion" and that the antecedent cause of death was "arterio sclerotic cardio vascular disease with detached retina recently." However, there is other medical testimony in the record that decedent's lungs were distended and that the cardiac failure was due to overtaxing the heart in an effort to get more oxygen into the lungs from a poisonous atmosphere.

There were three vital issues in this case. First, did the decedent die from an injury? Second, was the injury an accidental one? Third, was the injury one arising out of and within the scope of his employment?

Under the first assignment of error we find that all the issues were jury questions, and we cannot say that the verdict was against the manifest weight of the evidence or contrary to law.

As to assignment of error No. 3 concerning the admission in evidence of the death certificate, this court has held that the same was admissible. See *Rath* v. *Industrial Commission*, 99 Ohio App., 261, 129 N. E. (2d), 525. While the appellant in this case claims that there was an agreement at the rehearing that only the first part of this death certificate should be admitted and the rest masked, the actual proceedings at the trial were so indefinite, according to the record, that we cannot say exactly what did transpire. Nevertheless we adhere to our decision in the *Rath case* and hold that the death certificate in its entirety was admissible no matter whose exhibit it was. This assignment of error is overruled.

Assignment of error No. 4 is not well taken by reason of the above holding as to assignment of error No. 3.

However, assignments of error Nos. 2 and 5 need further discussion. Assignment of error No. 2 has to do with misconduct of counsel for the defendant. The first complaint is that counsel, by his action in objecting in open court in the presence of the jury and so the jury could hear him, made known to the jury by whom the special requests before argument were being asked. It has been held to be prejudicial error for a court to indicate at whose request a special charge before argument was given, and we can see no reason why the same degree of error should not be predicated when counsel does the same thing, even though the requests were given at the instigation of the defeated party.

The second contention under this assignment of error concerns statements made by defense counsel in his argument to the jury. These are two in number and have to do with expressions of opinion by counsel on the merits of the case. The first must be overruled because it is disputed and the remarks were not taken down by the court reporter. The second instance is reported on page 19 of the transcript:

"Mr. Duffy in continuing his argument stated: 'I have practiced many years like John, and I have never yet heard such a nasty case as this in my twenty-five years in industrial work.' * * * 'Mr. Locke is going to make a play and make you believe that that mine there is so full of gas it will kill anybody including Mr. Picchetti. If it was, everybody out there would be, I am sure.' "

While such argument was improper and went beyond the bounds of propriety, we cannot say it was such prejudicial error as to warrant in itself a reversal herein.

Assignment of error No. 5 is that the court refused to give special instruction No. 4 requested by the plaintiff before argument. It is as follows:

"I will say to you as a matter of law that in order to have a compensable injury under the Workmen's Compensation Act of Ohio, a person need not be violently struck by an outside agency, such as a blow, but such an injury may arise through an external means, such as working in fumes and dust and being

subjected to an event wherein the air that was breathed was deprived of its ordinary oxygen content and filled with deleterious gases.''

This instruction goes to the vital question in this case as to whether the inhalation of poisonous gas constitutes an accidental injury. No citation of authority is needed to support the proposition that if the instruction was proper a refusal to give it was prejudicial error no matter what the court said in its general charge. The argument around the instruction concerns whether the case of *Dripps* v. *Industrial Commission,* 165 Ohio St., 407, 135 N. E. (2d), 873, overrules the case of *Malone* v. *Industrial Commission,* 140 Ohio St., 292, 43 N. E. (2d), 266. While Judge Taft in his concurring opinion in the *Dripps case* thinks it does, the court does not so hold, and it is inconceivable to this writer that they would not have done so, in view of Judge Taft's opinion which was available to the court before the syllabus was written, if they had concurred therein. Consequently, as we view it, the *Malone case* is still the law of Ohio.

In the case of *Sebek* v. *Cleveland Graphite Bronze Co.,* 148 Ohio St., 693, at page 696, 76 N. E. (2d), 892, it is stated:

''This court has held in a number of cases that bodily harm, which occurs to a workman by the sudden, unexpected and unforeseen inhalation of noxious or poisonous gases or fumes, or by contact with a poisonous substance, constitutes a compensable injury within the meaning of the provisions of the Workmen's Compensation Act of Ohio. In such a situation, compensation is awarded on the basis of the injury and not for the disability or disease which may be attributable thereto. *Industrial Commission* v. *Roth,* 98 Ohio St., 34, 120 N. E., 172, 6 A. L. R., 1463; *Industrial Commission* v. *Burckard,* 112 Ohio St., 372, 147 N. E., 81; *Industrial Commission* v. *Palmer,* 126 Ohio St., 251, 185 N. E., 66; *Industrial Commission* v. *Helriggle,* 126 Ohio St., 645, 186 N. E., 711; *Industrial Commission* v. *Bartholome,* 128 Ohio St., 13, 190 N. E., 193; 42 Ohio Jurisprudence, 649, Section 64.''

We likewise think that this pronouncement is still the law of Ohio. It is also the law that within the broad rules stated by the Supreme Court each case must be decided according to the facts of the particular case within those rules which must be

interpreted according to the facts in the case under which they are announced. With these principles in mind it seems to us that the most vital question for the jury's consideration herein was whether the injury suffered by the decedent was an "accidental" injury within the law. Somewhere, somehow the jury should have been told whether the breathing of a poisonous gas by a miner could constitute an accidental injury within the law. This was not done at any place in the charge. The court did charge in substance the syllabus of the *Dripps case* but its reference to other circumstances was limited to a consideration of whether the injury was incurred in the course of decedent's employment. To exemplify this point the charge of the court is herein set forth:

"The fact that a workman is injured by exerting more effort or being subjected to a greater strain than is customary in the performance of his work is not in and of itself sufficient to entitle such workman to participate in the State Insurance Fund; and before such participation may be had it must appear that such increased effort or strain was occasioned by *some sudden mishap or unusual event*. On the other hand a person need not be violently struck by an outside blow or other agency in order to sustain an accidental injury, but such injury may be brought about by other unusual circumstances. There is evidence in this case of the conditions under which plaintiff's decedent worked or did not work on the day of his death in the mine and the condition of his health. It will be necessary that you take all these things into consideration in arriving at a conclusion whether the decedent on the day of his death suffered an injury *in the course of his employment within the contemplation and meaning of the term 'injury' as I defined it,* and if you find that he was so injured, whether there is any direct and proximate causal relationship between such injury and his death." (Emphasis added.)

In this connection the words "sudden" and "unusual" should have been defined as well as a statement made that the "conditions" could have been taken into account in determining whether an "accidental" injury had taken place. The contention of the defendant that the refusal to give special request No. 4 was cured by the general charge is obviously without merit.

It may be argued that the special request is not proper because the word, "event," near the end thereof was not modified by either the adjective "sudden" or the adjective "unusual." We do not think this is vital with the qualifying phrase, "wherein the air that was breathed was deprived of its ordinary oxygen content and filled with deleterious gases." Contrary to our preconceived notion the word "sudden" does not mean instantaneous. Webster's New Collegiate Dictionary gives the preferred definition of "sudden" as follows: "1. Happening or coming unexpectedly; unforeseen; unprepared for." This involves the concept in this case as to whether the decedent could reasonably have foreseen the fact that by reason of excessive shooting of cardox shells there would have been a poisonous accumulation of gases where he was working. The same situation would apply to miners working in a mine where there was a gradual accumulation of "black damp." Are we going to say that miners overcome with that proved killer, which is slow accumulating but nonetheless fatal, would be denied participation in the State Insurance Fund because it was neither "accidental" nor "sudden"? If that is to be the interpretation of the law I want no part of it.

I think the phrase above quoted modifying the word "event" sufficiently characterizes the concept of "sudden" and "unusual" so as to make the special instruction requested a correct proposition of law which should have been given, and that the failure so to do was prejudicial error for which the judgment in this case should be reversed.

This is especially so because the court did not anywhere specifically enlighten the jury about the law of poisonous gases as pertaining to an "accidental injury." Perhaps the trial court was being over cautious in interpreting what the *Dripps case* meant, and we can well understand that position. Nevertheless, there comes a time when a definite stand must be taken. Right or wrong we have done this and acted accordingly, and the trial court should have done likewise. The judgment is reversed and the cause remanded.

*Judgment reversed.*

McClintock, P. J., and McLaughlin, J., concur.