[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Burkhart v. H.J. Heinz Co.*, Slip Opinion No. 2014-Ohio-3766.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3766

BURKHART, APPELLEE, *v.* H.J. HEINZ COMPANY, APPELLANT, ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Burkhart v. H.J. Heinz Co.*,

Slip Opinion No. 2014-Ohio-3766.]

*Evidence—Evid.R. 804(B)(1)—Hearsay exception for former testimony— Predecessor-in-interest—Former testimony given by a claimant in a products-liability lawsuit against asbestos manufacturers is not admissible in a workers' compensation lawsuit brought by the claimant's surviving spouse against the claimant's employer alleging workplace exposure to asbestos when the employer or a predecessor-in-interest did not have an opportunity or a motive similar to the manufacturers' motive to develop the former testimony.*

(No. 2013-0580—Submitted February 25, 2014—Decided September 3, 2014.)

APPEAL from the Court of Appeals for Wood County,

No. WD–12–008, 2013-Ohio-723.

_____

**O'DONNELL, J.**

{¶ 1} In this appeal, we are asked to clarify whether former testimony given by the claimant in a products liability lawsuit against asbestos manufacturers is admissible in a workers' compensation lawsuit against the claimant's employer alleging workplace exposure to asbestos.

{¶ 2} Donald Burkhart worked for H.J. Heinz Company, developed mesothelioma, and subsequently died. He had given deposition testimony in a products-liability action he had filed against various asbestos manufacturers, but he did not sue H.J. Heinz as part of that lawsuit. After he died, his wife, Mary Lou Burkhart, filed a claim against H.J. Heinz seeking workers' compensation death benefits. She relied on her husband's deposition in the products-liability case to show that H.J. Heinz had injuriously exposed him to asbestos. The Industrial Commission denied her claim, and on appeal, the trial court struck her husband's former testimony from the record and entered summary judgment for H.J. Heinz. The court of appeals reversed the entry of summary judgment and held that Burkhart's deposition testimony is admissible to prove that H.J. Heinz injuriously exposed him to asbestos, concluding that the manufacturers defending the products liability action were predecessors-in-interest because they shared a similar motive with H.J. Heinz to develop Burkhart's testimony.

{¶ 3} Evid.R. 804(B)(1) states that former testimony of a declarant who is not currently available to testify is not excluded as hearsay when the following separate, conjunctive requirements are met: (1) the party against whom the testimony is offered, or, in a civil action or proceeding, a predecessor-in-interest, had an opportunity to examine the declarant in the prior proceeding, and (2) that party had a motive that is similar to the motive that the party would have in the present proceeding to develop the former testimony by direct, cross, or redirect examination.

**{¶ 4}** In this case, the parties who had an opportunity to examine Burkhart at the prior deposition were not predecessors-in-interest to H.J. Heinz. None of the asbestos manufacturers present at his deposition preceded H.J. Heinz in ownership of its business, its facilities, or the pipe insulation that allegedly caused his exposure to asbestos. Nor did any asbestos manufacturer in the products-liability litigation have the same or similar motive as H.J. Heinz to develop Burkhart's deposition testimony; rather, each asbestos manufacturer sought to disprove that he had been exposed to asbestos that *it* had produced, and none had an incentive to dispute that he had not been exposed to asbestos at H.J. Heinz.

**{¶ 5}** Accordingly, Burkhart's deposition testimony is not admissible in this case pursuant to Evid.R. 804(B)(1), and therefore the judgment of the court of appeals is reversed, and the case is remanded to the trial court for further proceedings.

## Facts and Procedural History

**{¶ 6}** H.J. Heinz employed Burkhart as a maintenance worker at its ketchup-bottling plant in Bowling Green, Ohio, from 1946 to 1976 and at its Fremont facility from 1976 until his retirement in 1986. During his tenure at the Bowling Green plant, he worked in the boiler room, where he was allegedly exposed to pipe insulation containing asbestos.

**{¶ 7}** Doctors diagnosed him with malignant pleural mesothelioma in November 2005, and as a result, he filed a products liability action against various asbestos manufacturers. Prior to his death on May 23, 2007, he gave a videotaped deposition in that case to perpetuate his testimony. However, H.J. Heinz was not a party to that lawsuit and had no opportunity to cross-examine him at that time.

**{¶ 8}** In March 2009, Burkhart's wife, Mary Lou Burkhart, filed a workers' compensation claim for death benefits, asserting that her husband had been exposed to asbestos while working for H.J. Heinz and that he died as a result

of an occupational disease. Both the district hearing officer and the staff hearing officer denied her claim, concluding that Mrs. Burkhart failed to prove that workplace exposure to asbestos caused her husband's death. The Industrial Commission denied review.

{¶ 9} Mrs. Burkhart appealed to the Wood County Common Pleas Court, and H.J. Heinz moved for summary judgment, asserting that she could not prove that it had injuriously exposed her husband to asbestos at work.

{¶ 10} Mrs. Burkhart opposed the motion for summary judgment, attaching the transcripts of the video depositions of her husband in the products-liability action. In particular, she relied on the following segments of his former testimony:

Q  All right. Now, in 1946, you said that you went into the boiler room, what did you have to do in the boiler room, what was your job?

A   Well, like I said, Heinz never throwed nothing away, and this asbestos stuff was knocked off the pipes, had to put it in a bucket and saved it and we would, in spare time, would beat it to pieces, make a paste out of it and put it back on the pipes.

Q  Okay. And would these be the pipes in the boiler room?

A  Yes, or anyplace else.

Q  Now, when you say this asbestos stuff—

A  Well, it was flaky, they called it asbestos, I don't know what it was.

Q  Who is they that called it asbestos?

A  Management.

* * *

Q  When you would pick up this asbestos in the buckets to mix it up and put it on, was that a dusty process?

A  Oh, yes.

Q  Do you believe that you breathed in that dust?

A  Well, if it was dust, I got some of it.

{¶ 11} Mrs. Burkhart also attached invoices for pipe insulation sent to the facility in Bowling Green, interrogatories filed in unrelated litigation in which Owens Corning Fiberglass Corporation admitted that this type of pipe insulation contained asbestos, an environmental report indicating that asbestos was present in pipe insulation in the Bowling Green and Fremont facilities, an affidavit from a coworker who expressed a belief that Burkhart had been exposed to asbestos dust in the workplace, Burkhart's medical records, and expert reports opining that workplace exposure to asbestos caused Burkhart's mesothelioma.

{¶ 12} The trial court struck Burkhart's deposition transcripts from the record, concluding that the exception to the hearsay rule for former testimony did not apply because H.J. Heinz, or a predecessor-in-interest, was not involved in the earlier litigation.  It also struck the invoices for pipe insulation, the interrogatories, and the environmental report, and it disregarded statements in Burkhart's medical records and the reports of Mrs. Burkhart's experts relating to Burkhart's workplace exposure to asbestos.

{¶ 13} The common pleas court then granted summary judgment in favor of H.J. Heinz, finding that evidence from a coworker that Burkhart had "worked in a dusty boiler room containing pipes he thought might have been covered with asbestos insulation" and testimony from a current H.J. Heinz employee that "it was 'possible' someone working in the boiler house at the Bowling Green plant could have been exposed to asbestos and that asbestos existed in the Fremont

plant at least until 1987" did not create a genuine issue of material fact that Burkhart had an injurious exposure to asbestos at the H.J. Heinz facilities.

{¶ 14} Mrs. Burkhart appealed to the Sixth District Court of Appeals, which reversed and held that the trial court erred in striking Burkhart's deposition testimony, because it determined that the manufacturers in the asbestos litigation were predecessors-in-interest to H.J. Heinz for purposes of Evid.R. 804(B)(1), in that, the appellate court concluded, they shared a similar motive to develop his testimony. According to the appellate court, "the defendants in the Cuyahoga County asbestos cases and appellee share the same position with respect to appellant: all would benefit if it was disproven that Donald Burkhart had been exposed to asbestos. " 2013-Ohio-723, 989 N.E.2d 128, ¶ 41 (6th Dist.). And after deciding that the trial court had acted unreasonably in striking the invoices for pipe insulation, the interrogatories, the environmental report, and portions of Burkhart's medical records and the expert reports, the court of appeals concluded that Mrs. Burkhart had presented sufficient evidence to survive the motion for summary judgment. *Id.* at ¶ 58.

{¶ 15} We accepted H.J. Heinz's discretionary appeal on one proposition of law:

> Pursuant to Evid.R. 804(B)(1) a deposition taken in an unrelated tort action against sellers of asbestos-containing materials is not admissible against a defendant employer in a subsequent workers' compensation action where the employer was not a party to the tort action and the alleged tortfeasors had no similar motives in cross-examining the decedent.

H.J. Heinz maintains that its own interests conflicted with those of the manufacturers who defended the asbestos litigation, because the manufacturers

had no incentive to challenge Burkhart's assertions that he had been exposed to asbestos in the workplace. H.J. Heinz emphasizes that the manufacturers made no effort to question Burkhart's ability to identify asbestos materials, to examine his potential exposure to asbestos during military service and at his father's garage, or to develop his statement that management had told him that the pipe insulation he repaired in the boiler room contained asbestos; rather, the manufacturers needed to establish only that their own asbestos had not been present in the H.J. Heinz facilities.

{¶ 16} Mrs. Burkhart contends that the manufacturers in the asbestos litigation can be considered predecessors-in-interest to H.J. Heinz because they had an opportunity and similar motive to develop Burkhart's testimony. She notes that her husband's exposure to asbestos at the workplace concerned each of the manufacturers, because "[n]o exposure at Heinz would mean no exposure to their product." She cites the Third Circuit Court of Appeals' decision in *Lloyd v. Am. Export Lines, Inc.*, 580 F.2d 1179 (3d Cir.1978), for the proposition that any party to prior litigation can be considered a predecessor-in-interest if it had a similar motive to cross-examine the declarant as the present party, and she notes the Sixth Circuit Court of Appeals and other Ohio intermediate appellate courts have adopted this view. And because the asbestos manufacturers and H.J. Heinz shared a "community of interest," *id.* at 1185, to disprove Burkhart's allegations of injurious exposure to asbestos, the former testimony is similar to the testimony H.J. Heinz would have sought to develop had it been present. Lastly, she argues that H.J. Heinz is estopped from objecting to the use of the deposition testimony, because it has used and continues to use that testimony to prove that Burkhart was not exposed to asbestos at the workplace.

{¶ 17} Accordingly, the issue is whether asbestos manufacturers defending a products-liability action may be considered predecessors-in-interest with a similar motive to develop the testimony of a witness as an employer

contesting a workers' compensation claim that it had injuriously exposed its employee to asbestos.

**The Former Testimony Exception to the Hearsay Rule**

{¶ 18} At common law, courts recognized an exception to the hearsay rule for former testimony elicited in a prior proceeding involving the same parties litigating the same issue. *See generally* 2 McCormick, *Evidence*, Section 303, at 487-490 (7th Ed.Broun Ed.2013); 5 Wigmore, *Evidence*, Section 1388, at 111 (Chadbourn Rev.1974); Weissenberger, *Ohio Evidence*, Section 804.16, at 232 (2013). Courts accepted former testimony because the core concern of the hearsay rule had been satisfied when the assertions of the witness had been tested in the crucible of cross-examination by the party against whom it was offered. 5 Wigmore, *Evidence*, Section 1362, at 3; 2 McCormick, *Evidence*, Section 301, at 482; Lilly, *An Introduction to the Law of Evidence*, Section 7.23, at 326 (3d Ed.1996).

{¶ 19} We first adopted the common-law exception in *Wagers v. Dickey*, 17 Ohio 439, 1848 WL 124 (1848), stating at the syllabus, "Where a witness who has testified in a cause is dead, on a trial of the same cause between the same parties, another witness may testify as to the substance of what the deceased witness testified on the former trial." And in *Summons v. State*, 5 Ohio St. 325, 342-343 (1856), we explained,

> Testimony of the statements of deceased witnesses given on a formal trial, between the same parties, touching the same subject-matter, has been admitted among the exceptions to the rule excluding hearsay evidence, from a very early period, and has been sanctioned by an unbroken current of decisions, both in England and in this country.

**{¶ 20}** The common-law rule evolved to also permit the admission of former testimony against a party "when that party is a successor in interest to the corresponding party in the former suit. This notion, to which the label 'privity' is attached, is considered to offer adequate protection to the party opposing admission." 2 McCormick, *Evidence*, Section 303, at 488. As Professor Weissenberger explains,

> Forcing a party to accept another litigant's cross-examination seemed unfair unless there was only a nominal change in parties, as when the parties were connected by privity, meaning they were privies in blood, property, or law, and held the same rights and protected the same interests. It did not appear unfair to hold a party responsible for a previous litigant's examination or cross-examination of a witness when the party against whom the prior testimony was offered had succeeded to the position of the predecessor litigant conducting the examination or cross-examination in the prior action.

(Footnotes omitted.) Weissenberger, *The Former Testimony Hearsay Exception: A Study in Rulemaking, Judicial Revisionism, and the Separation of Powers*, 67 N.C.L.Rev. 295, 307-308 (1989).

**{¶ 21}** For example, in *Rutherford v. Geddes*, 71 U.S. 220, 224, 18 L.Ed. 343 (1866), the United States Supreme Court upheld the exclusion of depositions taken in a separate admiralty action,

> for the reason that they were taken without notice to defendants, in another suit to which defendants were not parties, and in which they had no right or opportunity to cross-examine the witnesses.

> Nor were defendants in any manner privies to either party in the former suit, in which the depositions had been taken. This alone, it is well settled, is a sufficient reason for their exclusion.

*Accord Tappan v. Beardsley*, 77 U.S. 427, 436, 19 L.Ed. 974 (1870) ("depositions in chancery can only be read when the bill shows that the cause was against the same parties, or those claiming in privity with them"); *Rumford Chem. Works v. Hygienic Chem. Co. of New Jersey*, 215 U.S. 156, 159-160, 30 S.Ct. 45, 54 L.Ed. 137 (1909) (excluding former testimony based on the proponent's failure to establish that the party opponent was a party or a privy to a party in the prior proceeding).

{¶ 22} In *Metro. St. Ry. Co. v. Gumby*, 99 F. 192, 198 (2d Cir.1900), the Second Circuit Court of Appeals applied the former-testimony exception and explained that privity meant that the parties had

> "mutual or successive relationships to the same rights of property, and privies are distributed into several classes, according to the manner of this relationship. Thus, there are privies in estate, as donor and donee, lessor and lessee, and joint tenant; privies in blood, as heir and ancestor, and co-parceners; privies in representation, as executor and testator, administrator and intestate; privies in law, where the law, without privity of blood or estate, casts the land upon another, as by escheat."

*Id.* at 198, quoting 19 American and English Encyclopedia of Law, Privies-Privity, at 156 (1892). Similarly, the Supreme Court of North Carolina stated, "To make one a privy to an action, he must be one who has acquired an interest in the subject-matter of the action, either by inheritance, succession, or purchase

from a party to the action subsequent to its institution." *Bryan v. Malloy*, 90 N.C. 508, 511 (1884).

{¶ 23} In *Indus. Comm. v. Bartholome*, 128 Ohio St. 13, 26, 190 N.E. 193 (1934), we recognized that "[t]he rigor of the common-law rules of evidence has undergone much relaxation in order to meet the demands of an ever-changing civilization." In that case, Joseph Bartholome had been deposed by counsel for the Industrial Commission in his claim for workers' compensation benefits. After he died, his wife relied on his prior deposition to prove her entitlement to workers' compensation survivor benefits. We noted that former testimony is admissible in a civil proceeding if the person against whom the evidence is offered had the opportunity to cross-examine the declarant, the issues were substantially similar in both proceedings, and the proceedings involve either the same parties *or their representatives in interest*. *Id.* at 25-26. Noting that Bartholome had been cross-examined by the counsel for the Industrial Commission, the party opponent in both proceedings, we upheld the admission of this evidence. *Id.* at 25-26.

### Evid.R. 804(B)(1)

{¶ 24} Effective July 1, 1980, we adopted the Ohio Rules of Evidence, which pursuant to Evid.R. 102, "shall be construed to state the principles of the common law of Ohio unless the rule clearly indicates that a change is intended."

{¶ 25} Evid.R. 804(B) restates the former testimony exception to the hearsay rule:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> *(1) Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same

or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability.

{¶ 26} This exception to the hearsay rule applies to former testimony offered against a party when that party or the party's predecessor-in-interest was a party to the prior proceeding. The term "predecessor-in-interest" is generally treated as interchangeable with the phrase "persons in privity" and refers to one "from whom the present party received the right, title, interest or obligation that is at issue in the current litigation." Lilly, *An Introduction to the Law of Evidence*, Section 7.23, at 328; *see also* Weissenberger, *Ohio Evidence*, Section 804.16, at 234, fn. 730 (explaining that use of the term "predecessor in interest" in Evid.R. 804(B)(1) "was intended to mean 'privity' or some analogous concept implicating a true succession of legal interests").

{¶ 27} Thus, our rule does not change the common-law former-testimony exception, but rather retains the requirement that either the party against whom the former testimony is offered or that party's privy—i.e., its predecessor-in-interest—had the opportunity to cross-examine the declarant in the prior proceeding. It is therefore not enough that a prior litigant had an opportunity and similar motive to develop the testimony; there must be some legally recognized interest shared by the parties to assuage "the historical concern that it is generally unfair to impose upon the party against whom the hearsay evidence is offered responsibility for the manner with which the witness was handled by another party." Weissenberger, *Ohio Evidence*, Section 804.16, at 233.

**{¶ 28}** We recognize that some federal courts have determined that neither privity nor common property interests are required to establish a predecessor-in-interest relationship, concluding that a shared interest in the material facts and outcome of the case creates an interest that is sufficient to admit former testimony pursuant to Fed.R.Evid. 804(b)(1), the federal analogue to Evid.R. 804(B)(1). *See, e.g., New Jersey Turnpike Auth. v. PPG Industries, Inc.*, 197 F.3d 96, 110, fn. 21 (3d Cir.1999), citing *Lloyd v. Am. Export Lines, Inc.*, 580 F.2d 1179 (3d Cir.1978); *New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 651 (10th Cir.1989); *Clay v. Johns-Manville Sales Corp.*, 722 F.2d 1289, 1295 (6th Cir.1983); *Rule v. Internatl. Assn. of Bridge, Structural & Ornamental Ironworkers, Local Union No. 396*, 568 F.2d 558, 569 (8th Cir.1977), as modified on denial of rehearing (1978).

**{¶ 29}** Although federal caselaw construing an analogous provision in the Federal Rules of Evidence may be instructive in interpreting our rules, it is not binding on this court. *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 111 Ohio St.3d 300, 2006-Ohio-5789, 856 N.E.2d 213, ¶ 89; *State ex rel. Tyler v. Alexander*, 52 Ohio St.3d 84, 85, 555 N.E.2d 966 (1990), quoting *Houston v. Lack*, 487 U.S. 266, 280, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (declining to adopt construction of an appellate rule that is "remote from plain English").

**{¶ 30}** We do not find the federal cases persuasive. First, the historical development of the hearsay exception for former testimony in Ohio demonstrates that the use of the term "predecessor-in-interest" maintains the rule that former testimony may be offered against only a party to the prior proceeding or one in privity with such a party, and we construe the Rules of Evidence as continuing the common-law practice unless a change is clearly indicated. *See* Evid.R. 102; Weissenberger, *Ohio Evidence*, Section 804.11, at 224 (Evid.R. 804(B)(1) "is in accord with preexisting Ohio law"), and fn. 690, citing *Bartholome*, 128 Ohio St. 13, 190 N.E. 193.

**{¶ 31}** Second, the plain language of Evid.R. 804(B)(1) establishes separate, conjunctive requirements for the admission of former testimony: (1) either the party against whom the testimony is now offered, or that party's predecessor-in-interest, had an opportunity to examine the declarant in the prior proceeding, and (2) that party or its predecessor-in-interest had a motive to develop the former testimony that is similar to the motive that the party would have in the present proceeding. It is a basic rule of construction that a court will give effect to each term and avoid a construction that renders any provision meaningless, inoperative, or superfluous. *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 23; *State ex rel. Whitacre-Greer Fireproofing Co. v. Conrad*, 96 Ohio St.3d 340, 2002-Ohio-4742, 774 N.E.2d 1209, ¶ 16; *see* Turner, *Federal Rule of Evidence 804: Will the Real Predecessor-in-Interest Please Stand Up?* 19 Akron L. Rev. 251, 260 (1985) ("If a 'predecessor-in-interest' is merely a person with a 'similar motive to examine' then the phrase is meaningless and redundant"). We decline to adopt a reading of Evid.R. 804(B)(1) that conflates these two separate requirements. And we therefore reject the analysis of the federal courts.

**{¶ 32}** Evid.R. 804(B)(1) bars the admission of former testimony against a party when that party or a predecessor-in-interest had no opportunity to examine the declarant at the prior proceeding. And, even if the party or the party's predecessor-in-interest had an opportunity to examine the declarant, former testimony is nonetheless inadmissible if the examiner in the prior litigation lacked a similar motive to develop the declarant's testimony. Thus, contrary to the interpretation of the federal courts, we view the requirement that the examiner have had a similar motivation to be a further restriction on the admissibility of former testimony, not an expansion of the common law rule that permits the admission of former testimony against parties unrelated to the prior action.

**{¶ 33}** Here, the record does not demonstrate that any manufacturer that participated in Burkhart's deposition is a predecessor-in-interest to H.J. Heinz. Nothing indicates or suggests that any of these entities preceded H.J. Heinz in the ownership of its business or its facilities. Nor is there any showing in this record that any of these manufacturers sold the pipe insulation that allegedly caused his exposure to asbestos at the H.J. Heinz facilities. Thus, Mrs. Burkhart has failed to establish that any predecessor-in-interest to H.J. Heinz had an opportunity to cross-examine Burkhart during the prior litigation.

**{¶ 34}** In addition, Mrs. Burkhart has not demonstrated that any of the asbestos manufacturers had a similar motive to develop Burkhart's testimony as H.J. Heinz would have in this case. Notably, a manufacturer in a multidefendant asbestos case is liable only if the claimant has been exposed to *its* product and that exposure was a substantial factor in causing the claimant's injury. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph one of the syllabus. Thus, a manufacturer is not necessarily motivated to disprove the claimant's exposure to asbestos at the workplace, but rather is focused on ensuring that *its* asbestos products are not identified as causing the claimant's injury. A manufacturer may have an incentive to develop or allow testimony against other potentially liable parties, which could diminish its own liability and decrease its share of the damages. *See* R.C. 2307.22(A)(2) (providing that when multiple parties to a tort action are found responsible for the same injury, a tortfeasor responsible for 50 percent or less of the tortious conduct is liable only for its proportionate share of compensatory damages). It is not clear from this record that any of the manufacturers in the products liability case produced the pipe insulation at issue here or that any had an incentive to refute the assertion that it caused an injurious exposure to asbestos.

**{¶ 35}** Thus, the asbestos manufacturers that cross-examined Burkhart at his 2006 deposition neither were predecessors-in-interest to H.J. Heinz nor had a

similar motive to develop the deposition testimony through cross-examination. His former testimony is therefore not admissible in this action pursuant to Evid.R. 804(B)(1) as an exception to the hearsay rule.

## Conclusion

{¶ 36} Former testimony of an unavailable witness is admissible when the party against whom the testimony is offered, or, in a civil action or proceeding, a predecessor-in-interest, had an opportunity and similar motive to develop that testimony by direct, cross, or redirect examination. A predecessor-in-interest relationship is not established merely by showing that the parties to the proceedings shared an interest in the material facts and outcome of the case; rather, a predecessor-in-interest is one from whom the present party received the right, title, interest, or obligation that is at issue in the current litigation. And even if the party or its predecessor-in-interest had an opportunity to examine the declarant in a prior proceeding, former testimony is nonetheless inadmissible if the examiner lacked a similar motive to develop that testimony.

{¶ 37} Here, neither H.J. Heinz nor any predecessor-in-interest to H.J. Heinz had an opportunity to cross-examine Burkhart in the prior products-liability litigation, nor was there a similar motive to develop his testimony during his depositions. Thus, the transcript of that deposition testimony taken in that products-liability case may not be offered against H.J. Heinz in this action for workers' compensation benefits.

{¶ 38} Accordingly, the judgment of the court of appeals is reversed as to the admissibility of Burkhart's deposition testimony, and the matter is remanded to the trial court to consider whether the remaining evidence creates a genuine issue of material fact regarding his injurious exposure to asbestos in the workplace.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and STEWART, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

PFEIFER, J., dissents.

MELODY J. STEWART, J., of the Eighth Appellate District, sitting for LANZINGER, J.

_____

**PFEIFER, J., dissenting.**

{¶ 39} At some level, it is possible that the majority is technically correct in concluding that each of the various defendants in the prior litigation did not have a motive similar to that of H.J. Heinz Company in the current litigation. But there is no way for the majority to know that it is correct without assessing every question that each of the defendants asked in the prior litigation. To reach its expansive conclusion, the majority would have to determine whether the motive of each defendant to develop the testimony in the prior proceeding was similar to any motive that Heinz might have to develop testimony. In short, the majority would have to determine everything that each of the various attorneys thought throughout the entire litigation and the reasons why they adopted the approaches they did. The majority has not done so because the majority cannot do so.

{¶ 40} Instead, the majority falls back on a generality: it concludes that it is not clear from the record that any of the prior defendants "had an incentive to refute the assertion that it caused an injurious exposure to asbestos." Majority opinion at ¶ 34. It defies credulity to claim, as the majority does, that none of the previous defendants had any incentive to attempt to establish that Donald Burkhart was not injured by exposure to asbestos. *(Burkhart's attorney states that at least 25 defendants cross-examined Burkhart during a deposition in the previous litigation.)* The majority would have us believe that each of the defendants focused exclusively on pointing fingers at fellow defendants. But surely each and every one of the defendants would have argued that there was no

workplace exposure to asbestos if that had been a credible argument. That none of the  defendants argued that there was no exposure to asbestos suggests that it was overwhelmingly clear that there was exposure to asbestos in the workplace, not that the prior defendants did not have an incentive to establish the absence of asbestos.

{¶ 41} This case boils down to whether any of the various defendants in the prior litigation was a "predecessor in interest" to Heinz. The majority in this case views the issue in exceedingly narrow terms. A better approach would be to adopt the standard espoused in *Lloyd v. Am. Export Lines, Inc.*, 580 F.2d 1179 (3d Cir.1978). The court stated that it preferred an interpretation of "predecessor in interest" that "is realistically generous over one that is formalistically grudging." *Id*. at 1187. The court considered its view practical:

> "[I]f it appears that in the former suit a party having a like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination, the testimony may be received against the present party." Under these circumstances, the previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party.

*Id.*, quoting McCormick, *Handbook of the Law of Evidence*, Section 256, 619-620 (2d Ed.1972).

{¶ 42} The majority's approach in this case is "formalistically grudging," especially considering that we are assessing the evidence before us on a motion for summary judgment in the context of our no-fault workers compensation system. The key issue in this case isn't whether Heinz did anything wrong, whether intentionally, negligently, or in any other way, the issue is simply

whether Donald Burkhart was exposed to asbestos at his workplace. It is clear that he was exposed to asbestos in his workplace, and this court should not adopt a formalistically grudging approach to allow a narrow technical argument to obscure that unassailable fact.

{¶ 43} The former testimony is admissible and should be allowed. I dissent.

_____

Bevan & Associates, L.P.A., Inc., Thomas W. Bevan, David S. Bates, and Joshua P. Grunda, for appellee.

Seeley, Savidge, Ebert & Gourash Co., L.P.A., Keith A. Savidge, Andrew D. Bemer, and Eric D. Baker, for appellant.

Vorys, Sater, Seymour and Pease, L.L.P., Richard D. Schuster, Daniel E. Shuey, and Damien C. Kitte, urging reversal for amicus curiae, Ohio Manufacturers' Association.

_____